# UNITED STATES *v.* WELLS ET AL.

No. 95–1228.   Argued November 4, 1996—Decided February 26, 1997

*Deputy Solicitor General Dreeben* argued the cause for the United States. With him on the briefs were *Solicitor General Days, Acting Solicitor General Dellinger, Acting Assistant Attorney General Keeney, Paul A. Engelmayer,* and *William C. Brown.*

*James R. Wyrsch* argued the cause for respondents. With him on the brief was *Ronald D. Lee.**

JUSTICE SOUTER delivered the opinion of the Court.

The principal issue before us is whether materiality of falsehood is an element of the crime of knowingly making a false statement to a federally insured bank, 18 U. S. C. § 1014. We hold that it is not.

I

In 1993, the Government charged respondents, Jerry Wells and Kenneth Steele, with violating and conspiring to violate the cited statute as officers and part owners of Copytech Systems, Inc., a lessor of office copiers for a monthly fee covering not only use of the equipment but any service that might be required. To raise cash, Copytech sold its interest in the income stream from these contracts to banks.

In Count I of the indictment, the Government charged respondents with conspiring to violate § 1014 by concealing from several banks the true contractual terms.[1] Re-

---

*Bruce S. Rogow* and *Beverly A. Pohl* filed a brief for the National Association of Criminal Defense Lawyers as *amicus curiae* urging affirmance.

[1] Title 18 U. S. C. § 371 makes it a crime to "conspire . . . to commit any offense against the United States."

spondents supposedly conspired to provide the banks with versions of lease contracts purporting to indicate that Copytech's customers were responsible for servicing the equipment when, in fact, secret side agreements placed that responsibility on Copytech at no further cost to the lessees. See App. 24–25; 63 F. 3d 745, 748 (CA8 1995). The Government alleged that respondents concealed the service obligations in order to avoid tying up needed cash in reserve accounts, which the banks might have required Copytech to maintain if they had known of the company's servicing obligations. *Ibid.*

In Count II, respondents were charged with violating § 1014 by giving a bank forgeries of respondents' wives' signatures on personal guaranties designed to enable the bank to pursue the wives' assets if Copytech defaulted on any liability to the bank. See App. 21, 30–31; 63 F. 3d, at 748.[2] Each count of the indictment charged respondents with submitting one or more statements that were both false and "material." App. 24, 25, 29, 30–31.

At the end of the trial, the District Court instructed the jury, at the Government's behest, that withholding a "material fact" made a statement or representation false, *id.*, at 41, 42, and defined a material fact as one "that would be important to a reasonable person in deciding whether to engage or not to engage in a particular transaction," *id.*, at 42. Although there was no controversy over the law as stated in these instructions, the Government argued that materiality was for the judge to determine, while respondents said it was an issue for the jury. 63 F. 3d, at 749, nn. 3 and 4. Following Eighth Circuit precedent then prevailing, the District Court agreed with the Government and told the jury that "[t]he materiality of the statement . . . alleged to be false . . . is not a matter with which you are concerned and

---

[2] The Government also charged respondents with three other counts of violating § 1014. The District Court dismissed one count prior to trial and granted judgment of acquittal on the other two. 63 F. 3d, at 748; Brief for Respondents 2; Brief for United States 3, n. 1.

should not be considered by you in determining the guilt or innocence of the defendant[s]," App. 43. The jury convicted respondents on both counts, the court treated the statements as material, and respondents appealed.

While the appeal was pending, we decided *United States v. Gaudin*, 515 U. S. 506 (1995), in which the parties agreed that materiality was an element of 18 U. S. C. § 1001, but disputed whether materiality was a question for the judge or jury, 515 U. S., at 509. Applying the rule that "[t]he Constitution gives a criminal defendant the right to have a jury determine . . . his guilt of every element of the crime with which he is charged," we held that the jury was entitled to pass on the materiality of Gaudin's statements, *id.*, at 522–523. When the Court of Appeals in this case requested supplemental briefing on the applicability of *Gaudin*, respondents argued that under § 1014 materiality is an element on which they were entitled to a jury's determination; the Government argued, for the first time, that materiality is not an element under § 1014, so that no harm had been done when the judge dealt with the issue. The Court of Appeals agreed with respondents, vacated their convictions and sentences, and remanded the case for a new trial. 63 F. 3d, at 749–751.

We granted the Government's petition for certiorari to decide whether materiality of a false statement or report is an element under § 1014.[3] 517 U. S. 1154 (1996). We now vacate and remand.

---

[3] Most, but not all, of the Federal Courts of Appeals have held that materiality is an element. Compare *United States v. Lopez*, 71 F. 3d 954, 960 (CA1 1995), cert. denied, 518 U. S. 1008 (1996); *United States v. Ryan*, 828 F. 2d 1010, 1013, n. 1 (CA3 1987); *United States v. Bonnette*, 663 F. 2d 495, 497 (CA4 1981), cert. denied, 455 U. S. 951 (1982); *United States v. Thompson*, 811 F. 2d 841, 844 (CA5 1987); *United States v. Spears*, 49 F. 3d 1136, 1141 (CA6 1995); *United States v. Staniforth*, 971 F. 2d 1355, 1358 (CA7 1992); *Theron v. United States Marshal*, 832 F. 2d 492, 496–497 (CA9 1987), cert. denied, 486 U. S. 1059 (1988); *United States v. Haddock*, 956 F. 2d 1534, 1549 (CA10), cert. denied, 506 U. S. 828 (1992); *United States v. Rapp*, 871 F. 2d 957, 964 (CA11), cert. denied *sub nom. Bazarian v.*

## II

We first address respondents' efforts to block us from reaching the question on which we granted certiorari. Given the Government's proposal for jury instructions to the effect that materiality is an element under § 1014, respondents argue that Federal Rule of Criminal Procedure 30 and the doctrines of "law of the case" and "invited error" each bar the Government from taking the position here that materiality is not an element. None of these reasons stands in our way to reaching the merits.

Rule 30 (applicable in this Court, see Fed. Rules Crim. Proc. 1, 54(a)) provides that "[n]o party may assign as error any portion of the charge [given to the jury] . . . unless that party objects thereto before the jury retires to consider its verdict." But the Government is not challenging the jury instruction in an effort to impute error to the trial court; it is merely arguing that the instruction it proposed was harmless surplusage insofar as it was directed to the jury.

As for the two doctrines, respondents are correct that several Courts of Appeals have ruled that when the Government accepts jury instructions treating a fact as an element of an offense, the "law of the case" doctrine precludes the Government from denying on appeal that the crime includes the element. See *United States v. Killip*, 819 F. 2d 1542, 1547–1548 (CA10), cert. denied *sub nom. Krout v. United States*, 484 U. S. 987 (1987); *United States v. Tapio*, 634 F. 2d 1092, 1094 (CA8 1980); *United States v. Spletzer*, 535 F. 2d 950, 954 (CA5 1976).[4] They are also correct that Courts of

---

*United States*, 493 U. S. 890 (1989) (all holding materiality to be an element of § 1014), with *United States v. Cleary*, 565 F. 2d 43, 46 (CA2 1977) (concluding that materiality is not an element), cert. denied *sub nom. Passarelli v. United States*, 435 U. S. 915 (1978).

[4] In this context, the "law of the case" doctrine is something of a misnomer. It does not counsel a court to abide by its own prior decision in a given case, but goes rather to an appellate court's relationship to the court of trial. See 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4478 (1981).

Appeals have stated more broadly under the "invited error" doctrine " 'that a party may not complain on appeal of errors that he himself invited or provoked the [district] court . . . to commit.' " *United States* v. *Sharpe,* 996 F. 2d 125, 129 (CA6) (quoting *Harvis* v. *Roadway Express, Inc.,* 923 F. 2d 59, 60 (CA6 1991)), cert. denied, 510 U. S. 951 (1993). But however valuable these doctrines may be in controlling the party who wishes to change its position on the way from the district court to the court of appeals, they cannot dispositively oust this Court's traditional rule that we may address a question properly presented in a petition for certiorari if it was "pressed [in] or passed on" by the Court of Appeals, *United States* v. *Williams,* 504 U. S. 36, 42 (1992) (internal quotation marks and emphasis omitted). Accordingly, we have treated an inconsistency between a party's request for a jury instruction and its position before this Court as just one of several considerations bearing on whether to decide a question on which we granted certiorari.[5] See *Springfield* v. *Kibbe,* 480 U. S. 257, 259–260 (1987) *(per curiam).*[6] Here, it seems sensible to reach the question presented.

---

[5] Respondents offer variations on their "law of the case" and "invited error" doctrines. In addition to arguing that the "law of the case" doctrine holds the Government to the position it took on the jury instructions, respondents contend this doctrine holds the Government to the position it adopted in the indictment. See Brief for Respondents 14–16 (citing *United States* v. *Norberg,* 612 F. 2d 1 (CA1 1979)). For the reasons set forth in the text, this latter version of the doctrine does not stand in our way to reaching the question presented.

Along with arguing that the Government "invited error" in the District Court by proposing its jury instructions, respondents claim that the Government invited error in the Court of Appeals by failing to argue that materiality is not an element of § 1014 in its initial brief to that court. This claim is wrong. After the Court of Appeals requested supplemental briefing, the Government argued that materiality is not an element of § 1014 and therefore hardly "invited" that court's contrary ruling.

[6] In *Springfield* v. *Kibbe,* 480 U. S., at 259, the Court dismissed the writ of certiorari on prudential grounds in part because the petitioner there, like the Government here, sought "to revers[e] a judgment because of

The question of materiality as an element was raised before the Court of Appeals, ruled on there, clearly set forth in the certiorari petition, fully briefed, and argued. Nor would reaching the issue excuse inattention or reward cunning. For some time before respondents' trial in 1993, the Eighth Circuit had assumed that the Government was bound to prove a false statement's materiality as an element under § 1014, see 63 F. 3d, at 750–751; *United States* v. *Ribaste*, 905 F. 2d 1140, 1143 (1990); *United States* v. *McKnight*, 771 F. 2d 388, 389 (1985), and had treated this issue as one for the judge, not the jury, see *United States* v. *Ribaste, supra*, at 1143. Since the Government was confident that it had evidence of materiality to satisfy the Circuit rule, it had no reason not to address the element when it drafted the indictment and its proposed jury instructions. When *Gaudin* rendered it reversible error to assign a required materiality ruling to the court, the Government suddenly had reason to contest the requirement to show materiality at all. Nothing the Government has done disqualifies it from the chance to make its position good in this Court.

## III

We accordingly consider whether materiality of falsehood is an element under § 1014, understanding the term in question to mean "ha[ving] a natural tendency to influence, or [being] capable of influencing, the decision of the decision-making body to which it was addressed," *Kungys* v. *United States*, 485 U. S. 759, 770 (1988) (internal quotation marks

---

[jury] instructions that petitioner accepted, and indeed itself requested." In contrast to the case at hand, however, the petitioner in *Kibbe* had not, in the Court of Appeals, raised an issue critical to resolving the question presented in its petition for a writ of certiorari, the Court of Appeals had not considered that related issue, and the petitioner had not explicitly raised that related issue in its certiorari petition, *id.*, at 258–260. See also *United States* v. *Williams*, 504 U. S. 36, 43, n. 3 (1992) (discussing *Kibbe*).

omitted); see also *United States* v. *Gaudin*, 515 U. S., at 509.[7] We begin with the text. See *Community for Creative Non-Violence* v. *Reid*, 490 U. S. 730, 739 (1989). Section 1014 criminalizes "knowingly mak[ing] any false statement or report . . . for the purpose of influencing in any way the action" of a Federal Deposit Insurance Corporation (FDIC) insured bank "upon any application, advance, . . . commitment, or loan." 18 U. S. C. § 1014. Nowhere does it further say that a material fact must be the subject of the false statement or so much as mention materiality.[8] To the contrary, its terms cover "any" false statement that meets the other requirements in the statute, and the term "false statement" carries no general suggestion of influential significance, see *Kungys* v. *United States, supra,* at 781; cf. *Kay* v. *United States,* 303 U. S. 1, 5–6 (1938). Thus, under the first criterion in the interpretive hierarchy, a natural reading of the full text, see *United States* v. *American Trucking Assns., Inc.,* 310 U. S. 534, 542–543 (1940), materiality would not be an element of § 1014.[9]

---

[7] The Court of Appeals here also appears to have understood materiality to have this meaning. See 63 F. 3d, at 750 (relying on *United States* v. *Adler,* 623 F. 2d 1287, 1291 (CA8 1980), which defined "materiality" as having "a natural tendency to influence or [being] capable of influencing" an entity's decision (internal quotation marks omitted)).

[8] The pertinent text of § 1014 is: "Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of . . . any institution the accounts of which are insured by the Federal Deposit Insurance Corporation . . . , upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor, shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both."

[9] JUSTICE STEVENS argues that the four criminal acts other than "false statement" listed in § 1014 would in fact involve material misstatements, and that it follows on the theories of *ejusdem generis* and *noscitur a sociis* that false statements must also be shown to be material. *Post,* at 510–

Nor have respondents come close to showing that at common law the term "false statement" acquired any implication of materiality that came with it into § 1014. We do, of course, presume that Congress incorporates the common-law meaning of the terms it uses if those "'terms . . . have accumulated settled meaning under . . . the common law'" and "'the statute [does not] otherwise dictat[e],'" *Nationwide Mut. Ins. Co.* v. *Darden*, 503 U. S. 318, 322 (1992) (quoting *Community for Creative Non-Violence* v. *Reid, supra*, at 739). Respondents here, however, make no claims about the settled meaning of "false statement" at common law; they merely note that some common-law crimes involving false statements, such as perjury, required proof of materiality. See Brief for Respondents 23–24. But Congress did not codify the crime of perjury or comparable common-law crimes in § 1014; as we discuss next, it simply consolidated 13 statutory provisions relating to financial institutions, and, in fact, it enacted a separate general perjury provision at 18 U. S. C. § 1621, see 62 Stat. 773.[10]

___

511, n. 12. But this does not follow. The question is not whether the specified categories of statements will almost certainly be material statements in point of fact; like false statements made for the purpose of influencing a lender, the four other criminal acts will virtually always involve material misstatements. The question, however, is whether materiality must be proven as a separate element, and on that question a list of criminal acts, none of which is expressly described as "material," is no premise for the dissent's conclusion under the *ejusdem generis* and *noscitur a sociis* canons.

[10] Nor does *Fedorenko* v. *United States*, 449 U. S. 490 (1981), help respondents here. In *Fedorenko*, we agreed with the Government that, even though the phrase "willfully make a misrepresentation" in § 10 of the Displaced Persons Act, 62 Stat. 1013, did not use the term "material," it nonetheless applied only to willful misrepresentations about "material" facts, 449 U. S., at 507–508, and n. 28. The dissent argues we should reach a similar conclusion here, because *Kungys* v. *United States*, 485 U. S. 759, 781 (1988), made it clear that "misrepresentation" and "false statement" were on par at common law. *Post*, at 504, and n. 6. But the passage from *Kungys* quoted by the dissent addressed the historic meaning of the

Statutory history confirms the natural reading. When Congress originally enacted § 1014 as part of its recodification of the federal criminal code in 1948, 62 Stat. 752, it explicitly included materiality in other provisions involving false representations.[11] Even more significantly, of the 13 provisions brought together by § 1014, 10 had previously contained no express materiality provision and received none in the recodification,[12] while 3 of the 13 had contained express

_____

term "material," see 485 U. S., at 769, not the common-law meaning of "misrepresentation" or "false statement." Although *Kungys* supports the view that "materiality" has the same meaning in criminal statutes that prohibit falsehoods to public officials, whether the statutes refer to misrepresentations, see *id.*, at 772–776, or to some form of false statements, see *id.*, at 779–782, that does not mean that "misrepresentation" and "false statement" are identical in carrying an implicit requirement of materiality. Indeed, *Kungys* distinguished between the common-law meaning of "misrepresentation" and "false testimony," concluding that while the former had been held to carry a materiality requirement in many contexts, the terms "false" or "falsity" did not as frequently carry such an implication. *Id.*, at 781.

More fundamentally, we disagree with our colleague's apparent view that any term that is an element of a common-law crime carries with it every other aspect of that common-law crime when the term is used in a statute. JUSTICE STEVENS seems to assume that because "false statement" is an element of perjury, and perjury criminalizes only material statements, a statute criminalizing "false statements" covers only material statements. See *post*, at 504. By a parity of reasoning, because common-law perjury involved statements under oath, a statute criminalizing a false statement would reach only statements under oath. It is impossible to believe that Congress intended to impose such restrictions *sub silentio*, however, and so our rule on imputing common-law meaning to statutory terms does not sweep so broadly.

[11] See 18 U. S. C. § 1621, 62 Stat. 773 (entitled "Perjury generally," and prohibiting statements under oath regarding "any material matter which [one] does not believe to be true"); 18 U. S. C. § 1001, 62 Stat. 749 (entitled "Statements or entries generally," and prohibiting, *inter alia*, "knowingly and willfully falsif[ying] . . . a material fact").

[12] See 7 U. S. C. § 1514(a) (1946 ed.) ("mak[ing] any statement knowing it to be false . . . for the purpose of influencing"); 12 U. S. C. § 981 (1946 ed.) ("knowingly mak[ing] any false statement in an application for [a] loan");

materiality requirements and lost them in the course of consolidation.[13]   See *Williams* v. *United States*, 458 U. S. 279, 288 (1982).   The most likely inference in these circumstances is that Congress deliberately dropped the term "materiality" without intending materiality to be an element of § 1014. See *United States* v. *Shabani*, 513 U. S. 10, 13–14 (1994).[14]

---

12 U. S. C. § 1122 (1946 ed.) ("mak[ing] any statement, knowing it to be false, for the purpose of obtaining . . . any advance"); § 1123 (1946 ed.) ("willfully overvalu[ing] any property offered as security"); 12 U. S. C. § 1248 (1946 ed.) ("mak[ing] any statement . . . knowing the same to be false"); 12 U. S. C. § 1312 (1946 ed.) ("mak[ing] any statement, knowing it to be false, for the purpose of obtaining"); 12 U. S. C. § 1313 (1946 ed.) ("willfully overvalu[ing] any property offered as security"); 12 U. S. C. § 1441(a) (1946 ed.) ("mak[ing] any statement, knowing it to be false, . . . for the purpose of influencing"); 12 U. S. C. § 1467(a) (1946 ed.) ("mak[ing] any statement, knowing it to be false, . . . for the purpose of influencing"); 15 U. S. C. § 616(a) (1946 ed.) ("mak[ing] any statement knowing it to be false . . . for the purpose of obtaining . . . or for the purpose of influencing").

[13] See 7 U. S. C. § 1026(a) (1946 ed.) (making a "material representation"); 12 U. S. C. § 596 (1946 ed.) (making a "material statement"); and 12 U. S. C. § 1138d(a) (1946 ed.) (making a "material representation").

[14] JUSTICE STEVENS suggests that because he can discern no meaningful difference between the subject matter and penalties involved in the 42 sections of the United States Code criminalizing false statements that expressly include a materiality requirement, and the 54 sections criminalizing false statements that lack an express materiality requirement, we must infer that Congress intended all of the sections to include a materiality element.   See *post*, at 505–509.   In other words, Congress must have thought that including materiality in 42 statutes was surplusage.   This, of course, is contrary to our presumption that each term in a criminal statute carries meaning.   See *Bailey* v. *United States*, 516 U. S. 137, 145 (1995).   Moreover, the dissent's approach to statutory interpretation leads to remarkable results.   The statutes cited by the dissent contain a variety of different requirements; for example, some criminalize statements only if they were made with a particular intent, see, *e. g.*, 18 U. S. C. § 1919; 33 U. S. C. § 931, while others do not, see, *e. g.*, 7 U. S. C. § 13(a)(3); 7 U. S. C. § 6407(e).   Under our colleague's reasoning, unless a court could readily discern a meaningful difference between these two categories of statutes, apart from the language used, it should import the *mens rea* requirements expressly appearing in some sections to those that lack them.

While 2 of the 3 offenses from which the express materiality requirement was dropped used the term "representation," see n. 12, *supra*, and thus could have included a materiality element implicitly, see *Kungys* v. *United States*, 485 U. S., at 781 (noting that "misrepresentation" had been held to imply materiality), the remaining 11 would not have, as was clear from the opinion of the Court in *Kay* v. *United States*, 303 U. S. 1 (1938). *Kay* had construed 1 of the 10 statutes that were later mirrored in the language of § 1014;[15] when the petitioner claimed that the statements she had made could not "endanger or directly influence any loan made by" the decisionmaker, *id.*, at 5, we thought her arguments unimpressive, *ibid.*, and explained:

> "It does not lie with one knowingly making false statements with intent to mislead the officials of the Corporation to say that the statements were not influential or the information not important. There can be no question that Congress was entitled to require that the information be given in good faith and not falsely with intent to mislead. Whether or not the Corporation would act

---

[15] Compare § 8(a) of the Home Owners' Loan Act, 48 Stat. 134 (providing that "[w]hoever makes any statement, knowing it to be false, or whoever willfully overvalues any security, for the purpose of influencing in any way the action of the Home Owners' Loan Corporation or the Board or an association upon any application, advance, discount, purchase, or repurchase agreement, or loan, under this Act, or any extension thereof by renewal deferment, or action or otherwise, or the acceptance, release, or substitution of security therefor, shall be punished by a fine of not more than $5,000, or by imprisonment for not more than two years, or both"), with § 1014 as enacted in 1948, 62 Stat. 752 (providing that "[w]hoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of [enumerated institutions] upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor, shall be fined not more than $5,000 or imprisoned not more than two years, or both").

favorably on the loan is not a matter which concerns one seeking to deceive by false information. The case is not one of an action for damages but of criminal liability and actual damage is not an ingredient of the offense." *Id.,* at 5–6.[16]

Although some courts have read *Kay* as holding only that there is no need for the Government to prove that false statements actually influenced the decisionmaker, see, *e. g., United States* v. *Goberman,* 458 F. 2d 226, 229 (CA3 1972), the opinion speaks of the importance of the statements as well as their efficacy, and no one reading *Kay* could reasonably have assumed that criminal falsity presupposed materiality. Since we presume that Congress expects its statutes to be read in conformity with this Court's precedents, see, *e. g., North Star Steel Co.* v. *Thomas,* 515 U. S. 29, 34 (1995), and since the relevant language of the statute in *Kay* was substantially like that in § 1014, *Kay* stands in the way of any assumption that Congress might have understood an express materiality provision to be redundant.

Respondents' remaining arguments for affirmance are unavailing. They contend that Congress has ratified holdings of some of the Courts of Appeals that materiality is an element of § 1014 by repeatedly amending the statute without rejecting those decisions. But the significance of subsequent congressional action or inaction necessarily varies with the circumstances, and finding any interpretive help in congressional behavior here is impossible. Since 1948, Congress has amended § 1014 to modify the list of covered institutions and to increase the maximum penalty,[17] but without

---

[16] We ultimately did not uphold the conviction in *Kay,* 303 U. S., at 9–10, but vacated the lower court's judgment so that it would be free to address a separate issue relating to the indictment.

[17] See Pub. L. 91–609, § 915, 84 Stat. 1815 (adding FDIC-insured banks to the list of covered institutions); Pub. L. 101–73, § 961(h), 103 Stat. 500 (increasing the maximum punishment from its 1948 level of a $5,000 fine and two years' imprisonment to $1,000,000 and 20 years' imprisonment);

ever touching the original phraseology criminalizing "false statement[s]" made "for the purpose of influencing" the actions of the enumerated institutions. We thus have at most legislative silence on the crucial statutory language, and we have "frequently cautioned that '[i]t is at best treacherous to find in congressional silence alone the adoption of a controlling rule of law,'" *NLRB* v. *Plasterers,* 404 U. S. 116, 129–130 (1971) (quoting *Girouard* v. *United States,* 328 U. S. 61, 69 (1946)). But even if silence could speak, it could not speak unequivocally to the issue here, since over the years judicial opinion has divided on whether § 1014 includes a materiality element, see n. 3, *supra,* and we have previously described the elements of § 1014 without any mention of materiality, see *Williams* v. *United States,* 458 U. S., at 284. It would thus be impossible to say which view Congress might have endorsed. See *Fogerty* v. *Fantasy, Inc.,* 510 U. S. 517, 527–532 (1994).[18]

Respondents also rely on the 1948 Reviser's Note to § 1014, which discussed the consolidation of the 13 provisions into one, and explained that, apart from two changes not relevant here,[19] the consolidation "was without change of substance,"

---

Pub. L. 101–647, § 2504(g), 104 Stat. 4861 (increasing the maximum prison term to 30 years).

[18] If we were to rely on legislative history, the reports would be of no help to respondents. See H. R. Rep. No. 91–1556, pp. 70–71 (1970) (addressing the amendment adding FDIC-insured institutions, describing the statute as "provid[ing] penalties for making false statements or reports in connection with loans or similar transactions"); H. R. Rep. No. 101–54, pt. 1, p. 400 (1989) (on the amendment increasing the maximum prison term to 20 years and a $1,000,000 fine, describing § 1014 as "deal[ing] with false statements in loan and credit applications"); H. R. Rep. No. 101–681, pt. 1, p. 175 (1990) (on the amendment increasing the maximum prison term to 30 years, describing § 1014 as "relating to fraudulent loan or credit applications").

[19] The two substantive changes were: the adoption of a single punishment, which was identical to the punishment set forth in the majority of the predecessor statutes; and the enumeration of a uniform definition of the types of transactions covered by the statute, which was a newly

Historical and Revision Notes following § 1014, 18 U. S. C., p. 247. Respondents say that the revisers' failure to mention the omission of materiality from the text of § 1014 means that Congress must have "completely overlooked" the issue. Brief for Respondents 29–30. But surely this indication that the "staff of experts" who prepared the legislation, *Muniz* v. *Hoffman,* 422 U. S. 454, 470, n. 10 (1975), either overlooked or chose to say nothing about changing the language of three of the former statutes does nothing to muddy the ostensibly unambiguous provision of the statute as enacted by Congress, cf. *Consumer Product Safety Comm'n* v. *GTE Sylvania, Inc.,* 447 U. S. 102, 108 (1980) ("Absent a clearly expressed legislative intention to the contrary, [statutory] language must ordinarily be regarded as conclusive"). In any event, the revisers' assumption that the consolidation made no substantive change was simply wrong. As respondents candidly conceded at oral argument, they failed to discover a single case holding that any of the predecessor statutes lacking a materiality requirement implicitly contained one, and after our decision in *Kay* v. *United States,* 303 U. S. 1 (1938), Congress could not have assumed that a materiality element was implicit in a comparable statute that was silent on the issue, see *supra,* at 494–495. Dropping the materiality element from the three statutes could not, then, reasonably have been seen as making no change. Those who write revisers' notes have proven fallible before. See *State Farm Fire & Casualty Co.* v. *Tashire,* 386 U. S. 523, 532, n. 11 (1967).[20]

---

phrased "composite" of the then-existing terms. See Historical and Revision Notes following § 1014, 18 U. S. C., p. 247.

[20] The dissent contends that, because *McClanahan* v. *United States,* 12 F. 2d 263, 264 (CA7 1926), and *United States* v. *Kreidler,* 11 F. Supp. 402, 403 (SD Iowa 1935), "held or assumed that" two statutes without an explicit materiality requirement nonetheless carried an implicit one, the revisers likely assumed that all of the statutes consolidated in § 1014 contained a materiality requirement. *Post,* at 502–503. Neither case, however, held that one of § 1014's predecessor statutes contained a materiality

Respondents next urge that we follow the reasoning of some Courts of Appeals in reading materiality into the statute to avoid the improbability that Congress intended to impose substantial criminal penalties on relatively trivial or innocent conduct. See 63 F. 3d, at 751; *United States* v. *Williams*, 12 F. 3d 452, 458 (CA5 1994); *United States* v. *Staniforth*, 971 F. 2d 1355, 1358 (CA7 1992). But we think there is no clear call to take such a course. It is true that we have held § 1014 inapplicable to depositing false checks at a bank, in part because we thought that it would have "ma[d]e a surprisingly broad range of unremarkable conduct a violation of federal law," *Williams* v. *United States*, 458 U. S., at 286–287, n. 8, and elsewhere thought it possible to construe a prohibition narrowly where a loose *mens rea* requirement would otherwise have resulted in a surprisingly broad statutory sweep, see *United States* v. *X-Citement Video, Inc.*, 513 U. S. 64, 71–72 (1994). But an unqualified

requirement. In *Kreidler,* the defendant challenged his indictment under § 8(a) of the Home Owners' Loan Act (the same provision at issue two years later in *Kay,* see n. 14, *supra*), arguing that a statement "must be material and calculated to deceive," *Kreidler,* 11 F. Supp., at 403. The District Court simply "assume[d]" the statement "must be relevant and material," and then found that the indictment satisfied those requirements. *Id.,* at 403–404. The question in *McClanahan* was whether the defendant's prosecution under § 31 of the Federal Farm Loan Act of 1916, 39 Stat. 382, 12 U. S. C. § 981 (1946 ed.), was beyond Congress's constitutional power because the statute did "not limit the [punishable] statement to such as relate or are material to the proposed loan." 12 F. 2d, at 263. The court upheld the constitutionality of the statute. While stating that it "would in all probability be concluded" that "wholly frivolous and unrelated" false statements made in a loan application "did not supply the basis for a prosecution under section 31," the court made it clear that this was dicta, because it explained in the very next sentence that "there [was] no question of the relevancy of the alleged false statements knowingly made" in the case before it. *Id.,* at 264. In determining what the revisers might have thought the words of § 1014 meant, we think it far more likely that they would have relied on the clear implication of our 1938 decision in *Kay* v. *United States,* 303 U. S. 1, rather than on the dicta from two earlier District or Appeals Court cases.

reading of § 1014 poses no risk of criminalizing so much conduct as to suggest that Congress meant something short of the straightforward reading. The language makes a false statement to one of the enumerated financial institutions a crime only if the speaker knows the falsity of what he says and intends it to influence the institution. A statement made "for the purpose of influencing" a bank will not usually be about something a banker would regard as trivial, and "it will be relatively rare that the Government will be able to prove that" a false statement "was . . . made with the subjective intent" of influencing a decision unless it could first prove that the statement has "the natural tendency to influence the decision," *Kungys* v. *United States,* 485 U. S., at 780–781. Hence the literal reading of the statute will not normally take the scope of § 1014 beyond the limit that a materiality requirement would impose.

Finally, the rule of lenity is no help to respondents here. "The rule of lenity applies only if, 'after seizing everything from which aid can be derived,' . . . we can make 'no more than a guess as to what Congress intended.'" *Reno* v. *Koray,* 515 U. S. 50, 65 (1995) (quoting *Smith* v. *United States,* 508 U. S. 223, 239 (1993), and *Ladner* v. *United States,* 358 U. S. 169, 178 (1958)). Read straightforwardly, § 1014 reveals no ambiguity, its *mens rea* requirements narrow the sweep of the statute, and this is not a case of guesswork reaching out for lenity.

IV

Respondents advance two further reasons to affirm the Court of Appeals's judgment, even on the assumption that materiality is not an element. According to respondents, the trial judge's instruction that "[t]he materiality of the statement . . . alleged to be false . . . is not a matter with which you are concerned and should not be considered by you in determining the guilt or innocence of the defendant[s]," App. 43, probably left the jurors with the impression that the statements as alleged would have been material, and

that impression could have improperly influenced the jury in passing on the elements of falsity and purpose. Respondents also suggest that because the indictment alleged materiality, any ruling that materiality need not be shown in this case would impermissibly "amend" the indictment contrary to the Fifth Amendment's requirement that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U. S. Const., Amdt. 5. Since respondents failed to raise either of these issues in their briefs before the Court of Appeals and that court did not pass on these questions, we leave it to the Court of Appeals on remand to take up the propriety of raising these issues now and to address them if warranted.

The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, dissenting.

Violation of 18 U. S. C. § 1014 is a crime punishable by up to 30 years in prison, a fine of up to $1,000,000, "or both." I am convinced that Congress did not intend this draconian statute to apply to immaterial falsehoods, even when made for the purpose of currying favor with a bank's loan officer. The Court's contrary conclusion relies heavily on three dubious assumptions: (1) that our decision in *Kay* v. *United States*, 303 U. S. 1 (1938), speaks to the issue in this case; (2) that the revisers of § 1014 erred in advising us that their 1948 consolidation of 13 earlier statutes did not change the law; and (3) that flattery of bank officers is uncommon. I disagree with each of those assumptions.

I

Our opinion in *Kay*, on which the majority relies, does not address the issue in this case. It does, however, illuminate

the problems with the Court's holding today. Ms. Kay was convicted of making false statements under the Home Owners' Loan Act, 12 U. S. C. §§ 1467(a) and (e) (1940 ed.). 303 U. S., at 3-4. She had falsely stated that the amount of the claims she presented for settlement was two to four times their actual value. *Id.*, at 5. Among the challenges that Kay pressed before this Court was an argument that she could not be convicted under § 1467(a) because the Government produced no evidence that her false statement had any effect on the actions of the Home Owners' Loan Corporation. *Ibid.* In rightly rejecting this argument, this Court reasoned:

> "Whether or not the Corporation would act favorably on the loan is not a matter which concerns one seeking to deceive by false information. The case is not one of an action for damages but of criminal liability, and actual damage is not an ingredient of the offense." *Id.*, at 6.

There is a clear distinction between the concept of *materiality*—whether the information provided *could* have played a proper role in the loan approval process—and the concept of *reliance*—whether the information *did* play a role in the process. Kay could not plausibly have contended that her false statement was immaterial. Certainly a misrepresentation regarding the proposed amount of settlement was relevant and could have affected the Corporation's decision. Instead, she argued that the charge was insufficient because it did not allege that the application had been approved, *i. e.*, that her material false statement had played a causal role. The Court, quite properly, rejected that argument because the crime was complete when the material false statement was made. Since the materiality of the statement was not disputed, the Court had no occasion to address the question presented by this case.

The difference between the issue in *Kay* and the issue in this case does, however, illustrate the importance of the Court's holding today. Conceivably a prohibition against making intentional false statements might encompass four different categories: (1) all lies, including idle conversation;

(2) all lies intended to encourage a favorable response, including mere flattery; (3) all material misstatements; or (4) only those material misstatements that are relied upon by the deceived decisionmaker. *Kay* held that the coverage of one of the predecessor statutes that became § 1014 is broader than the fourth category. In my opinion, § 1014 embraces only the third category. The Court, however, concludes that it encompasses all of the second category, which I call the "flattery category" even though that label does not adequately describe its breadth. As now construed, § 1014 covers false explanations for arriving late at a meeting, false assurances that an applicant does not mind if the loan officer lights up a cigar, false expressions of enthusiasm about the results of a football game or an election, as well as false compliments about the subject of a family photograph. So long as the false statement is made "for the purpose of influencing" a bank officer, it violates § 1014. *Ante,* at 499.

## II

The history of § 1014 also refutes the Court's interpretation of that statute. Prior to the 1948 codification, three of the statutes that became a part of § 1014 included an express materiality requirement. The others did not. The Reviser's Note states that the amalgamation of these 13 statutes made no "change of substance" in the law.[1] The majority, today interpreting § 1014 as making a substantial change in the law, concludes that the reviser was "simply wrong." *Ante,* at 497.

A more plausible explanation shows that the reviser was, in fact, correct. Prior to the 1948 codification, no federal court appears to have held that any of § 1014's predecessor statutes encompassed immaterial statements. At least two cases, however, had held or assumed that the nonexplicit statutes did contain a materiality requirement. See *McClanahan* v. *United States,* 12 F. 2d 263, 264 (CA7

---

[1] Historical and Revision Notes following § 1014, 18 U. S. C., p. 247.

1926);[2] *United States* v. *Kreidler*, 11 F. Supp. 402, 403 (SD Iowa 1935).[3] Given these federal cases and the absence of any common-law precedent for punishing immaterial false statements, it is far more likely that the revisers assumed that all of these statutes included the common-law requirement of materiality than that congressional silence was intended to make a dramatic change in the law.[4] In my judgment, the fact that the materiality element had been expressly included in some of the predecessor statutes, and only implicitly included in the others, explains why the Reviser's Note could accurately state that the omission of the express reference to materiality was not a "change of substance."[5]

At least three additional reasons support the conclusion that the revisers correctly assumed that all of the federal statutes criminalizing false statements included a materiality requirement that was sometimes implicit and sometimes

[2] "If the false statements charged and proved were wholly frivolous and unrelated, it would in all probability be concluded that they did not supply the basis for a prosecution under [the Act]."

[3] "We may assume that a statement . . . not likely to influence one exercising common prudence and caution, would not support the charge. . . . [I]t must be relevant and material."

[4] The Court argues that these cases are not persuasive because they did not *hold* that the relevant predecessor statutes to §1014 contained a materiality requirement. *Ante,* at 497–498, n. 20. Even if this is true, the fact remains that the only reported cases to address this issue stated that these statutes did contain a materiality requirement. The natural inference is that the prevailing view at the time, and therefore the prevailing view of the Congress that enacted §1014, was that all "false statements" had to be material to result in criminal penalties. Instead of these cases, the Court asserts, Congress "likely . . . relied on the clear implication of our 1938 decision in *Kay* v. *United States,* 303 U. S. 1." *Ante,* at 498, n. 20. It is difficult to see how Congress could have relied on this "clear implication" when the opinion does not in any way address materiality, but instead holds that *reliance* is not a requirement of §1014. See *United States* v. *Goberman,* 458 F. 2d 226, 229 (CA3 1972); *United States* v. *Kernodle,* 367 F. Supp. 844, 851–852 (MDNC 1973).

[5] Historical and Revision Notes following §1014, 18 U. S. C., p. 247.

explicit. First, contrary to the Court's assertion, crimes involving "false statements" have a common-law heritage that includes an assumption of a materiality requirement. This conclusion is consistent with our prior holding that the term "misrepresentation" in § 10 of the Displaced Persons Act of 1948, 62 Stat. 1013, implicitly contained a materiality requirement. See *Fedorenko* v. *United States*, 449 U. S. 490, 507–508, and n. 28 (1981). Today the Court discounts the significance of that holding because it assumes that at common law there was a critical difference between a "misrepresentation" and a "false statement." *Ante*, at 491–492, n. 10. However, *Kungys* v. *United States*, 485 U. S. 759 (1988), from which the Court draws this inference, made it perfectly clear that "false statements" share a common-law ancestry with "misrepresentations."[6] At common law, neither term included immaterial falsehoods such as mere flattery.[7]

---

[6] "The term 'material' in § 1451(a) is not a hapax legomenon. Its use in the context of *false statements* to public officials goes back as far as Lord Coke, who defined the crime of perjury as follows:

"'Perjury is a crime committed, when a lawful oath is ministred by any that hath authority, to any person, in any judicial proceeding, who sweareth absolutely, and falsly in a manner material to the issue, or cause in question, by their own act, or by the subornation of others.' 3 E. Coke, Institutes 164 (6th ed. 1680).

"Blackstone used the same term, explaining that in order to constitute 'the crime of wilful and corrupt *perjury*' the *false statement* 'must be in some point material to the question in dispute; for if it only be in some trifling collateral circumstance, to which no regard is paid,' it is not punishable. 4 W. Blackstone, Commentaries *137. See also 1 W. Hawkins, Pleas of the Crown, ch. 27, § 8, p. 433 (Curwood ed. 1824). Given these common-law antecedents, it is unsurprising that a number of federal statutes criminalizing *false statements* to public officials use the term 'material.'" 485 U. S., at 769 (some emphases added).

See also Saks, *United States* v. *Gaudin:* A Decision with Material Impact, 64 Ford. L. Rev. 1157, 1163–1166 (1995) (tracing § 1001 and other federal false statement statutes back to the common law).

[7] Contrary to the Court's assertion, *ante*, at 491–492, n. 10, I do not assume that when Congress criminalizes an element of a common-law crime, the federal offense carries with it every other element of the

Second, at least 100 federal false statement statutes may be found in the United States Code. About 42 of them contain an express materiality requirement; approximately 54 do not.[8] The kinds of false statements found in the first category[9] are, to my eyes at least, indistinguishable from those

common-law crime. I do presume, however, that when Congress criminalizes an element of a common-law crime, it intends that element to have the same meaning it had at common law.

[8] Judge Kozinski catalogued these statutes in his dissenting opinion in *United States* v. *Gaudin,* 28 F. 3d 943, 959–960, nn. 3 and 4 (CA9 1994). He made the assumption (which I share) that a materiality requirement "is probably implied" in every one of these statutes that does not contain such an express requirement. *Id.,* at 959.

[9] See *id.,* at 959, n. 3 ("7 U. S. C. § 13(a)(3) (felony to knowingly make statement that 'was false or misleading with respect to any material fact' in report required by statute or futures association); 8 U. S. C. § 1160(b)(7) (penalizing knowing and willful false statement of material fact in application for status of special agricultural worker); 8 U. S. C. § 1225a(c)(6) (penalizing knowing and willful false statement of material fact in application for special status by virtue of entering U. S. before Jan. 1, 1982); 8 U. S. C. § 1325(a) (penalizing improper entry into U. S. by virtue of willful false statement of material fact); 10 U. S. C. § 931 (perjury in military proceeding); 18 U. S. C. § 152 (maximum five year sentence for knowing and fraudulent receipt of material amount of property with intent to defeat bankruptcy code); 18 U. S. C. § 542 (maximum prison term of two years for entry of goods by means of material false statement); 18 U. S. C. § 1919 (maximum one year prison term for false statement of material fact knowingly made to obtain unemployment compensation for federal service); 19 U. S. C. § 1629(f)(2) (maximum five year prison term for any person who knowingly and willfully covers up a material fact from customs official); 19 U. S. C. § 1919 (maximum two year prison term for knowingly making false statement of material fact with intent to influence tariff adjustment); 19 U. S. C. § 2316 (maximum one year prison term for knowingly making false statement of material fact when seeking relief from injury under section 2311); 19 U. S. C. § 2349 (maximum two year prison term for making false statement of material fact for purposes of obtaining relief from injury under Trade Act of 1974); 20 U. S. C. § 1097(b) (maximum one year prison term for knowingly and willfully concealing material information in connection with assignment of federally insured student loan); 20 U. S. C. § 4442(c)(1) (maximum one year prison term for knowingly making false statement of material fact in seeking cultural and art development grants);

506

in the second category.[10]   Nor is there any obvious distinction between the range of punishments authorized by the two different groups of statutes.   Moreover, some statutes,

22 U. S. C. § 618(a)(2) (maximum six month prison term for willfully making false statement of material fact in registering to distribute political propaganda); 22 U. S. C. § 2778(c) (maximum 10 year prison term for willfully making untrue statement of material fact in report required for control of arms exports and imports); 26 U. S. C. § 7206(1) (maximum three year prison term for willfully making false declaration as to material matter regarding income taxes when under penalty of perjury); 26 U. S. C. § 9012(d) (maximum five year prison term for knowingly and willfully making misrepresentation of material fact during examination of campaign's matching payment account); 29 U. S. C. § 439(b) (maximum one year prison term for person who knowingly makes false statement of material fact in report required under section 431); 29 U. S. C. § 461(d) (maximum one year prison term for knowing misrepresentation of material fact in report labor organization must file once it assumes trusteeship over subordinate organization); 31 U. S. C. § 5324(b)(2) (prohibiting material omission or misstatement of fact in report on monetary instruments transactions); 42 U. S. C. § 290cc–32 (maximum five year prison term for knowingly making false statement of material fact in sale to state for items or services funded by federal government under Medicare); 42 U. S. C. § 300d–20 (same); 42 U. S. C. § 300e–17(h) (maximum five year prison term for knowingly and willfully making false statement of material fact in [a health maintenance organization's] financial disclosure); 42 U. S. C. § 300w–8(1) (maximum five year prison term for knowingly and willfully making false statement of material fact in sale to state of items or services subsidized by federal government); 42 U. S. C. § 300x–56(b) (same); 42 U. S. C. § 300dd–9 (same—under formula grants to states for care of AIDS patients); 42 U. S. C. § 300ee–19(b) (same—under funds for AIDS prevention); 42 U. S. C. § 707(a)(1) (same—under funds for social security); 42 U. S. C. § 1320a–7b(a)(1) (maximum five year prison term for knowingly and willfully making false statement of material fact in application for payments in federally-approved plans for medical assistance); 42 U. S. C. § 1383a(a)(1) (maximum one year prison term for knowingly and willfully making false statement of material fact in application for Supplemental Security Income benefits); 42 U. S. C. § 1973i (penalizing knowingly false information for purpose of establishing eligibility to vote); 42 U. S. C. § 3795a (penalizing knowing and willful misstatement or concealment of material fact in any application or record required under chapter); 42 U. S. C. § 6928(d)(3)

such as the one we construed in *United States* v. *Gaudin*, 515 U. S. 506 (1995), criminalize two equally culpable categories of false statements but include an explicit materiality

(maximum two year prison term for knowingly making false material statement in compliance documents); 42 U. S. C. § 6992d(b)(2) (maximum two year prison term for knowingly making false material statement in compliance documents); 42 U. S. C. § 7413(c)(2) (maximum two year prison term for knowingly making false material statement in documents required under chapter); 46 U. S. C. § 1171(b) (any person who, in application for financial aid under merchant marine act, willfully makes untrue statement of material fact is guilty of misdemeanor); 46 U. S. C. § 31306(d) (maximum five year prison sentence for knowingly making false statement of material fact in declaration of citizenship under Shipping Act); 46 U. S. C. App. § 839 (maximum five year prison term for knowingly making false statement of material fact to secure required approval of Secretary of Transportation); 49 U. S. C. App. § 1472 (maximum three year prison term for knowingly and willfully falsifying or concealing a material fact to obtain [Federal Aviation Administration] certificate); 50 U. S. C. § 855 (maximum five year prison term for willfully making false statement of material fact in registration statement); 50 U. S. C. App. § 1193(h) (maximum two year prison term for knowingly furnishing information that is false or misleading in any material respect regarding renegotiation of airplane contracts)").

[10] See *id.*, at 960, n. 4 ("7 U. S. C. § 614(b–3)(3) (penalizing those who make false statement in application for tax-payment warrant); 7 U. S. C. § 2028(d) (punishing those who obtain funds from a Puerto Rico block grant 'by . . . false statement'); 7 U. S. C. § 6407(e) (barring 'false or unwarranted statements' regarding fluid milk products); 12 U. S. C. § 1782(a)(3) (penalizing false statement in administration of insurance fund); 13 U. S. C. § 213 (penalties for perjury); 12 U. S. C. § 1847 (penalizing false entries in book, report, or statement of bank holding company); 15 U. S. C. § 50 (penalizing false statement to [Federal Trade Commission]); 15 U. S. C. § 645 (offenses and penalties for certain crimes related to commerce and trade); 15 U. S. C. § 714m (punishing knowingly false statement to Commodity Credit Corporation); 15 U. S. C. § 1825(a)(2)(B) (penalizing false statement in report required by Horse Protection Act); 16 U. S. C. § 831t(b) (penalizing false statement to or on behalf of the Tennessee Valley Authority); 18 U. S. C. § 287 (penalizing false claims against U. S. government); 18 U. S. C. § 288 (penalizing false claims for postal losses); 18 U. S. C. § 289 (penalizing false claims for pensions); 18 U. S. C. § 924 (penalizing knowing false statement in information gun dealers must provide); 18 U. S. C. § 1011 (penalizing

requirement in one but not the other category.  See *id.*, at 524–525 (REHNQUIST, C. J., concurring).  It seems far-fetched that Congress made a deliberate decision to include

knowing false statement in sale of mortgage to federal land bank); 18 U. S. C. § 1012 (penalizing intentional false entry in book of Department of Housing and Urban Development); 18 U. S. C. § 1014 (penalizing false statement to influence federal loan or credit agency); 18 U. S. C. § 1015 (penalizing false statement in naturalization proceeding); 18 U. S. C. § 1018 (penalizing public official who knowingly falsifies official certificate or writing); 18 U. S. C. § 1020 (penalizing false statement regarding highway projects); 18 U. S. C. § 1026 (penalizing false statement regarding farm indebtedness for purpose of influencing Secretary of Agriculture); 18 U. S. C. § 1027 (penalizing false statement in documents required by [Employee Retirement Income Security Act of 1974]); 18 U. S. C. § 1158 (penalizing false statement to secure Indian Arts & Crafts Board trademark); 18 U. S. C. § 1542 (penalizing willful and knowing false statement in passport application); 18 U. S. C. § 1546 (penalizing false statement in immigration documents); 18 U. S. C. § 1712 (penalizing falsification of postal returns to increase compensation); 18 U. S. C. § 1920 (penalizing false statement to obtain Federal employees' compensation); 18 U. S. C. § 2386 (penalizing willful false statement when registering certain organizations); 18 U. S. C. § 2388(a) (penalizing willful false statement with intent to interfere with armed forces during war); 18 U. S. C. § 2424 (penalizing knowing and willful false statement about alien procured or maintained for immoral purposes); 22 U. S. C. § 1980(g) (penalizing false statement in seeking compensation for loss or destruction of commercial fishing vessel or gear); 22 U. S. C. § 2197(n) (penalizing false statement regarding federal insurance of investment in foreign nations); 26 U. S. C. § 7232 (penalizing false statement regarding registration as manufacturer or dealer in gasoline); 29 U. S. C. § 666(g) (penalizing false statement in health and safety report required under this chapter); 30 U. S. C. § 820 (penalizing false statement in document required under subchapter governing mine safety and health); 30 U. S. C. § 941 (penalizing false statement or representation in seeking benefits under subchapter governing mine safety and health); 30 U. S. C. § 1232(d)(1) (penalizing false statement in report submitted with reclamation fee); 30 U. S. C. § 1268(g) (penalizing false statement in documents required by Federal program or Federal Lands program regarding surface mining); 31 U. S. C. § 5322 (penalizing willful violations of subchapter); 33 U. S. C. § 931 (penalizing false statement for purpose of obtaining workers' compensation benefit); 33 U. S. C. § 990(b) (penalizing false statement to corporation governing Saint Lawrence Seaway); 33 U. S. C. § 1319(c)(2)

or to omit a materiality requirement every time it created a false statement offense. Far more likely, in my view, Congress simply assumed—as the Government did in *Gaudin*—that the materiality requirement would be implied wherever it was not explicit.

Third, § 1014 was revised at a time when a different view of statutory interpretation held sway. When Congress enacted the current version of the law in 1948, a period marked by a spirit of cooperation between Congress and the Federal Judiciary, Congress looked to the courts to play an important role in the lawmaking process by relying on common-law tradition and common sense to fill gaps in the law—even to imply causes of action and remedies that were not set forth in statutory text. It was only three years earlier that one of the greatest judges of the era—indeed, of any era—had admonished us "not to make a fortress out of the dictionary." *Cabell* v. *Markham*, 148 F. 2d 737, 739 (CA2

---

(penalizing knowing false statement in record required by chapter on navigation and navigable waters); 38 U. S. C. § 1987 (penalizing knowing false statement in application, waiver of premium, or claim for benefits, for National Service Life Insurance or U. S. government life insurance); 40 U. S. C. § 883(b) (penalizing false statement to Pennsylvania Avenue Development Corp.); 42 U. S. C. § 408 (penalizing false statement to obtain social security benefits); 42 U. S. C. § 1761*(o)* (penalizing false statement in connection with summer food service programs for children at service institutions); 42 U. S. C. § 1973i(c) (penalizing knowing false information for purpose of establishing eligibility to vote); 42 U. S. C. § 3220 ([penalizing] false statement to obtain financial assistance or defraud Secretary of Department of Health and Human Services); 42 U. S. C. § 4912(c) (penalizing false statement in documents filed pursuant to chapter's noise control requirements); 43 U. S. C. § 1350(c) (penalizing knowing false statement in application required under subchapter on submerged public lands); 45 U. S. C. § 231*(l)*(a) (penalizing knowing false statement in report required by subchapter on Rail Road Retirement Accounts); 45 U. S. C. § 359(a) (penalizing knowing false statement to obtain unemployment insurance); 49 U. S. C. Appx. § 2216 (penalizing U. S. officials who knowingly make false statement regarding projects submitted for approval of Secretary of Transportation)").

1945) (L. Hand, J.)  The Court's approach to questions of statutory construction has changed significantly since that time.[11]  The textual lens through which the Court views the work product of the 1948 revisers is dramatically different from the contemporary legal context in which they labored. In 1948, it was entirely reasonable for Congress and the revisers to assume that the Judiciary would imply a materiality requirement that was a routine aspect of common-law litigation about false statements.

Indeed, subsequent history confirms the reasonableness of such an assumption: The vast majority of judges who have confronted the question have found an implicit materiality requirement in § 1014.  As the Court recognizes, all but one of the Courts of Appeals have so held.  *Ante*, at 486, n. 3. Moreover, both in this case and in *Gaudin* the prosecutor initially proceeded on the assumption that a nonexplicit statute contained an implicit materiality requirement.  Only after it failed to convince us in *Gaudin* that the materiality issue should be resolved by the judge rather than the jury did the Government switch its position and urge us to reject that assumption entirely.

### III

Because precedent and statutory history refute the Court's position, its decision today must persuade, if at all, on the basis of its textual analysis.  But congressional silence cannot be so convincing when the resulting interpretation is so unlikely.[12]  Even the Court's recent jurisprudence affirms

---

[11] See *Middlesex County Sewerage Authority* v. *National Sea Clammers Assn.*, 453 U. S. 1, 24–26 (1981) (STEVENS, J., concurring in judgment in part and dissenting in part).

[12] In fact, the text of § 1014 supports the conclusion that "false statement" was intended to cover only material false statements.  That statute forbids a person, in the relevant circumstances, to make "any [1] false statement or [2] report, or willfully overvalu[ing] any [3] land, [4] property or [5] security."  18 U. S. C. § 1014.  The four covered actions other than "false statement[s]" are inherently material.  Obviously the overvaluing

that "[t]he purpose of Congress is the ultimate touchstone." *Gade* v. *National Solid Wastes Management Assn.*, 505 U. S. 88, 96 (1992) (internal quotation marks omitted). Mindful of this dictate, the Court has routinely rejected literal statutory interpretations that would lead to anomalous results. See *INS* v. *Cardoza-Fonseca*, 480 U. S. 421, 454 (1987) (SCALIA, J., concurring in judgment) (citing cases). We have been especially willing to reject a purely literal reading of a federal statute that would, as here, expand its coverage far beyond any common-law antecedent.[13]  And, as the majority

---

of any "land, property or security" will be material to any relevant banking transaction.  Similarly, the making of a "false report" will presumably be inherently material since the information requested on the report form will be that which the bank deems "capable of influencing" its decision. Read in this context, and drawing on standard statutory construction techniques, see *Norfolk & Western R. Co.* v. *Train Dispatchers*, 499 U. S. 117, 129 (1991) (applying *"ejusdem generis"*—that general terms should be understood in context of specific ones); *Gustafson* v. *Alloyd Co.*, 513 U. S. 561, 575 (1995) (resolving statutory question problem with *"noscitur a sociis"*—that "a word is known by the company it keeps"), "false statement" means those false statements that are material.

[13] For instance, in *United States* v. *X-Citement Video, Inc.*, 513 U. S. 64 (1994), we held that the "knowingly" requirement of the Protection of Children Against Sexual Exploitation Act of 1977, 18 U. S. C. § 2252, applied to the age of the individual visually depicted. We interpreted the statute this way even though it flew in the face of the "most natural grammatical reading." 513 U. S., at 68. To hold otherwise, we explained, would lead to results that were "absurd." Similarly, in *Staples* v. *United States*, 511 U. S. 600 (1994), we held that the National Firearms Act, 26 U. S. C. §§ 5801–5872, contained an implicit *mens rea* requirement although one was not apparent on the face of the statute.  "Section 5861(d) is silent concerning the *mens rea* required for a violation," we explained.  511 U. S., at 605.  "Nevertheless, silence on this point by itself does not necessarily suggest that Congress intended to dispense with a conventional *mens rea* element . . . ."  *Ibid.*

An understanding of these cases also exposes the illogic of the Government's and the Court's reliance on *United States* v. *Shabani*, 513 U. S. 10 (1994).  In *Shabani*, lacking a clear textual directive, we *declined* to depart from the common-law tradition of not requiring proof of an overt act

acknowledges, this would not be the first time that we have had to interpret § 1014 so that it would not " 'make a surprisingly broad range of unremarkable conduct a violation of federal law.' " *Ante*, at 498 (quoting *Williams* v. *United States*, 458 U. S. 279, 286–287 (1982)).

Congress, the Court seems to recognize, could not have intended that someone spend up to 30 years in prison for falsely flattering a bank officer for the purpose of obtaining favorable treatment.[14]   Yet the Court justifies its interpretation of the statute by positing that a literal reading of § 1014 will not "normally" extend the statute "beyond the limit that a materiality requirement would impose." *Ante*, at 499.   In making this assertion, the Court correctly avoids relying on prosecutors not to bring frivolous cases.[15]

---

to establish conspiracy.   In this case, of course, the Government asks us to do the opposite: to derogate the common law without clear congressional approval.

[14] Consider the following scenario.   A crafty homeowner in need of a mortgage, having learned that the bank's loan officer is a bow tie aficionado, purchases his first bow tie to wear at their first meeting.   As expected, the loan officer is wearing such a tie, which, incidentally, the prospective borrower considers downright ugly.   Nevertheless, thinking that flattery will increase the likelihood that the officer will be favorably disposed to approving the loan, the applicant swallows hard and compliments the officer on his tie; he then volunteers the information that he too always wears a bow tie.   This is a lie.   Under the majority's interpretation, this person could spend 30 years in federal prison.   He made a "false statement."   18 U. S. C. § 1014.   In fact, until that day he had never worn a bow tie.   And the statement was made "for the purpose of influencing" the bank.   *Ibid.*   The applicant subjectively hoped that the loan officer— flattered and feeling a sartorial common ground—would be more likely to approve his mortgage.

[15] It is well settled that courts will not rely on "prosecutorial discretion" to ensure that a statute does not ensnare those beyond its proper confines. See *Baggett* v. *Bullitt*, 377 U. S. 360, 373–374 (1964) ("It will not do to say that a prosecutor's sense of fairness and the Constitution would prevent a successful . . . prosecution for some of the activities seemingly embraced within the sweeping statutory definitions"); *Keyishian* v. *Board of Regents of Univ. of State of N. Y.*, 385 U. S. 589, 599 (1967) ("It is no answer

Rather, it appears to have made an empirical judgment that false statements will not "usually" be about a trivial matter, and that the Government will "'relatively rare[ly]'" be able to prove that nonmaterial statements were made for the purpose "of influencing a decision." *Ibid.* I am not at all sure, nor do I know how the Court determined, that attempted flattery is less common than false statements about material facts. Even if it were, the "unusual" nature of trivial statements provides scant justification for reaching the conclusion that Congress intended such peccadillos to constitute a felony.

## IV

Today the Court misconstrues § 1014, its history, and our precedents in holding that the statute does not contain a basic materiality requirement. In doing so, the Court confidently asserts that almost every court to interpret § 1014, the revisers of the statute, and the courts discussing *Kay* were all simply wrong. Unwarranted confidence in one's own ability to ascertain the truth has prompted many a victim of deception to make the false statement that "flattery will get you nowhere." It now appears that flattery may get you into a federal prison.

I respectfully dissent.

---

to say that the statute would not be applied in such a case"). Prosecutors necessarily enjoy much discretion and generally use it wisely. But the liberty of our citizens cannot rest at the whim of an individual who could have a grudge or, perhaps, just exercise bad judgment.