**UNITED STATES of America, Plaintiff,**

v.

**Breck M. SWANQUIST, Defendant.**

**No. 96 CR 207.**

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 24, 1997.

Vilija A. Bilaisis, U.S. Attorney's Office, Chicago, IL, for U.S.

Edward L. Foote, Howard Michael Pearle, Peter Charles McCabe, III, John Edmund Mooney, Winston & Strawn, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Breck M. Swanquist was at the time of the events charged in the Government's September, 1996 Superseding Indictment president of the Gary Wheaton Bank of Fox Valley. The Indictment charged Mr. Swanquist with knowingly making and causing to be made false statements of material fact in connection with applications for or continuances of loans at a number of banks in the Chicago area between February, 1988 and September, 1991, in violation of 18 U.S.C. § 1014. A jury, after deliberating four days, found Mr. Swanquist guilty on Counts 1–8 and 12–16 of the Indictment. He was found not guilty on Counts 9–11. Following post-trial proceedings including a sentencing hearing, Mr. Swanquist was sentenced on June 20, 1997 to a term of 24 months custody in the United States Bureau of Prisons. Mr. Swanquist sought bail pending appeal. Finding that each of the issues raised by Mr. Swanquist had been considered during the trial of this case and in post-trial motions (other than the sentencing issue which was considered at the sentencing hearing), and found to be without merit, I denied the motion. This opinion discusses the issues raised in the motion for release and my reasons for rejecting Mr. Swanquist's arguments.

*A. Whether Conviction on Counts 4–6 Was Improper.*

■ Mr. Swanquist's first argument in his motion before me for bond pending appeal is that the Government's case with respect to Counts 4–6 was in part based on the argument that Mr. Swanquist did not disclose a $80,024 real estate mortgage with Champion Federal Bank and that this was error because his loan at Champion Federal was secured by an assignment of beneficial interest rather than a mortgage.

Count 4 of the Superseding Indictment charged Mr. Swanquist with making false statements in a financial statement submitted to First National Bank of Des Plaines in June, 1989 for the purpose of influencing the Bank to give or renew a loan to Mr. Swanquist. Specifically, the Indictment charged that Mr. Swanquist reported that the outstanding balance of his real estate mortgages was $398,000, the outstanding balance of his automobile loans was $45,000 and the outstanding balance of his unsecured debt was $16,000. In fact, the indictment charged, each of these statements was false.

Count 5 of the Superseding Indictment charged Mr. Swanquist with submitting the same false financial statement charged in Count 4 to Merchants National Bank, also in June, 1989, again for the purpose of obtaining or renewing a loan. Count 6 of the Superseding Indictment charged Mr. Swanquist with using the same false financial statement to obtain or renew a loan at Boulevard Bank in Chicago in January, 1990.

The Government's evidence at trial showed that at the time he submitted his financial statement to First National Bank of Des Plaines in June, 1989, Mr. Swanquist owed $80,024 more in "real estate mortgages" than stated on his financial statement, as well as $11,842 more in debts for automobile loans

and $178,712 more in unsecured loans than stated on his June, 1989 financial statement. (Government Chart 4) This figure varied slightly, but not with respect to the mortgage loans, at the time Mr. Swanquist submitted the same financial statement to Merchants National Bank, also in June, 1989. The overall misrepresentation in Mr. Swanquist's financial picture had risen to $453,503 over the amount of loan disclosed by the time Mr. Swanquist submitted the June, 1989 financial statement to Boulevard Bank in January, 1990, according to the Government's evidence. (Government Chart 6) At that time, according to the Government, Mr. Swanquist, among other things, failed to disclose not only the $80,024 real estate mortgage at Champion Federal but a $75,510 mortgage with Merchants National Bank.

Mr. Swanquist argued at trial, and repeats in this motion, that the $80,024 loan represented as secured by a real estate mortgage at Champion Federal was not a mortgage at all, but was instead secured by the assignment of a beneficial interest. Thus, he argues, it was error for the Government to argue that he had failed to disclose this $80,024 "mortgage." Mr. Swanquist's argument stems from holdings in other contexts that the assignment of a beneficial interest in a land trust does not create a mortgage. *E.g., In re Romano*, 426 F.Supp. 1123, 1129 (N.D.Ill.1977). Mr. Swanquist does not argue, however, that he disclosed the $80,024 debt secured by the assignment of beneficial interest in any other place on his financial statement.[1] The Government, moreover, divided its categorization of debt according to the three categories—mortgage, automobile and unsecured—appearing in Mr. Swanquist's June, 1989 financial statement. Mr. Swanquist himself in later documents referred to the Champion Federal assignment of beneficial interest as a mortgage debt.

1. Mr. Swanquist's June 1, 1989 financial statement lists debt as follows:

| | |
|---|---|
| Auto Loans | $ 45,000 |
| Unsecured Debt/Incl. 3 IGLP Loans | 16,000 |
| Real Estate Mortgages | 398,000 |
| 2 VISA Preferred Cards | 9,000 |
| Misc. Bills, Utilities, Taxes & Accruals | 25,000 |
| Total Liabilities | $493,000 |

Govt.Ex. MNB 19.

The Government, in Charts 4, 5 and 6 (the charts pertaining to Counts 4–6), listed "loans disclosed" under "real estate mortgages," "auto loans," and "unsecured debt/ incl. 3 IGLP loans" and in a separate column "actual loans" that totaled all of the loans it maintained Mr. Swanquist had at the time. The actual loans were listed across from the categories under "loans disclosed ."

*E.g.,* Govt.Ex. FC12. Under these facts, I agree with the Government that whether the assignment of beneficial interest was a true mortgage was irrelevant. The evidence showed, and the jury found, with respect to Counts 4–6 that Mr. Swanquist failed to disclose debt in each of the categories named.

### B. Whether Defendant's Proposed Instruction Was Improperly Modified.

■ Mr. Swanquist also argues that it was reversible error justifying bond pending appeal to refuse to give, without modification, a jury instruction that stated:

It is Mr. Swanquist's theory of defense that the financial statements and mortgage applications which he provided to the banks and financial institutions involved here were not false and represented his understanding of his financial position at the time the statements were prepared, including his knowledge of his debts and net worth.

I declined to give the last part of the instruction ("including his knowledge of his debts and net worth") because I thought it might confuse the jury. Mr. Swanquist relies on *U.S. v. Staniforth,* 971 F.2d 1355 (7th Cir.1992), to support his argument that he should have been able to include the last phrase in his theory of defense instruction. *In Staniforth,* the court held that net worth was relevant to a defendant's intent to influence a bank's action through omissions of certain debt. The court held that it was error to refuse to allow a defendant to ask a bank officer on cross examination whether if he had known defendant's true net worth he would have renewed defendant's loan. *Id.* at 1359. This case is not comparable. There was no evidence in this case that Mr. Swanquist did not disclose on his financial statements all, or substantially all, of his assets (indeed, the evidence indicated that on various statements, apart from failing to disclose substantial liabilities, he overstated assets or listed assets that he did not even own). At any rate, Mr. Swanquist was allowed to argue that he did not knowingly make misstatements on his various financial statements. But Mr. Swanquist's instruction might have made the jury think that a larger,

undisclosed net worth would excuse the failure to disclose substantial liabilities even if the defendant knowingly failed to disclose liabilities with the intent to influence the bank's action. Put another way, the test under 18 U .S.C. § 1014 is not a balancing test as defendant argued; it does not excuse making a false statement on the ground that the false statement is not material because the defendant had other assets. *U.S. v. Wells,* —— U.S. ——, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997). The proposed defense instruction as limited by me accurately stated the law and the failure to include the portion of the instruction that I excluded did not deny Mr. Swanquist a fair trial.

### C. Use of the Word "Net" Value in the October 1988 Financial Statement.

■ In defendant's motion for release pending appeal, he does not explain what issue is being raised in this section. Apparently, however, Mr. Swanquist's argument is that as a matter of law his October 1988 financial statement was not false because in it he allegedly considered, but did not disclose, various unsecured loans in calculating the net worth of certain securities. He then disclosed a value for those securities that he described as the "net" value. Mr. Swanquist again relies on *U.S. v. Staniforth* for this argument. But *Staniforth* does not support him. There the court noted that a loan applicant is expected to list his assets at their full value and in the opposing column for liabilities, list any debt, including debt owed on the asset. 971 F.2d at 1357. Mr. Swanquist also ignores the import of *U.S. v. Wells,* decided by the Supreme Court in February of this year. In *Wells,* the Supreme Court held that 18 U.S.C. § 1014 does not require proof of materiality. The question is simply whether a defendant knowingly makes a false statement or report with the purpose of influencing any action by a bank. The jury is therefore entitled to conclude that the omission of debt was purposeful whether or not assets were also allegedly discounted. The jury heard Mr. Swanquist's testimony. There could be no error in allowing the jury to reach the conclusion that Mr. Swanquist violated section 1014.

### D. Whether Agent Sebo's Testimony Was Improper

Mr. Swanquist argues that Agent Sebo, an IRS agent, was allowed to testify improperly. I limited Agent Sebo's testimony to summarizing evidence in the record. His testimony was therefore proper.

### E. Whether There Was Evidence From Which a Jury Could Convict on Counts 3, 6 and 13.

Mr. Swanquist has renewed his earlier argument that his loans at Boulevard Bank were not "renewed, issued or approved," as charged in the Indictment based on financial statements submitted by him. Before allowing those counts to go to the jury, however, I reviewed them and the evidence in support, after considering the Government's arguments that the evidence did support the charge. I ultimately agreed. The verdicts are fully supported by the evidence. Specifically, Mr. Swanquist submitted financial statements at various points in response to the request by Boulevard Bank officer Lewis Ruff. The financial statements were provided for the purpose of influencing Boulevard Bank in renewing or continuing to approve loans. Although the loans were technically not new loans, the jury was entitled to conclude that Mr. Swanquist knew that the loans could be called for payment if the bank felt insecure.

### F. Whether There Was Evidence That Would Support Conviction on Counts 13–16.

Mr. Swanquist was acquitted of Counts 10 and 11. He argues that the evidence was essentially the same with respect to Counts 13–16 and that the jury's verdict with respect to these counts should therefore be overturned. The issue, however, is whether there was evidence from which a jury could find guilt beyond a reasonable doubt as to the counts on which Mr. Swanquist was convicted. The evidence was overwhelming that Mr. Swanquist's January 31, 1991 financial statement, which is the basis for conviction on these counts, failed to disclose numerous outstanding loans.

### G. Whether the Victim Must Discover the Loss for Purposes of Determining the Date After Which Payments Are Considered Restitution

At sentencing Mr. Swanquist argued that under the Sentencing Guidelines, the relevant date for determining "loss" under U.S.S.G. § 2F1.1 is the date on which the victim discovers the loss. I concluded that the date the Government discovered the loss, and in this case, began investigating was the relevant date. Thus, I raised Mr. Swanquist's offense level by seven points pursuant to the Sentencing Guidelines. Under U.S.S.G. § 2F1.1 the appropriate measure of loss is the "amount of the loan not repaid at the time the offense is discovered," reduced by certain amounts. *U.S. v. Lucas,* 99 F.3d 1290 (6th Cir.1996), held that the date the "offense is discovered" can be either the date the Government discovers the offense or the date the victim discovers it, whichever comes first. At the sentencing hearing, the Government established the date that it learned of the various offenses. The Sixth Circuit's interpretation in *Lucas* is sensible for the reasons stated in that opinion and I have no reason to believe the Seventh Circuit will reach a different conclusion. Even if it were to do so, however, the result would be only to remand for findings on when the victim banks learned (in some cases they presumably knew earlier and in some cases presumably learned from the Government authorities) of the offense. I have no reason, therefore, to believe that Mr. Swanquist's sentence would be materially affected even by a ruling by the Seventh Circuit that was contrary to the ruling in *Lucas.*

### Conclusion

I have examined each of the issues raised by Mr. Swanquist in his motion before me for bail pending appeal. All of them with the exception of the sentencing issue, which was extensively discussed on the record at the sentencing hearing, were discussed and examined during trial or during post-trial proceedings. I find no basis upon which Mr. Swanquist is likely to obtain a reversal, a

new trial or to avoid a sentence involving custody.