UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No.01-30213
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee

VERSUS

ROOSEVELT FOUNTAIN, SR., also known as Schoolboy, and SHIRLEY FOUNTAIN ELLISON,

Defendants - Appellants

_____

Appeals from the United States District Court
For the Western District of Louisiana
_____

December 20, 2001

Before JOLLY and PARKER, Circuit Judges, and MILLS[*], District Judge.

ROBERT M. PARKER, CIRCUIT JUDGE:

Roosevelt Fountain, Sr., and Shirley Fountain Ellison appeal their convictions for various violations of the Lacey Act. We AFFIRM the convictions in all respects.

_____

[*] District Judge of the Central District of Illinois, sitting by designation.

1

## I. BACKGROUND

Roosevelt Fountain, Sr. ("Fountain") and his daughter, Shirley Fountain Ellison ("Ellison") operated an oyster fishing business in Cameron Parish, Louisiana, called Fountain Seafood, Inc. Their convictions arise from the manner in which they operated this business.

In February 1999, the government indicted the appellants for conspiracy to violate the Lacey Act and violation of several substantive provisions of the Lacey Act, specifically 16 U.S.C. § 3372(a)(2)(A)[2], 16 U.S.C. § 3372(a)(4), and 16 U.S.C. § 3372(d)(2).[3] The indictment alleged that the purpose of the conspiracy was to maximize the quantity of oysters sold by appellants to their customers. The indictment further contended that the appellants worked to accomplish this goal by creating false records relating to their oyster sales.

In August 2000, the parties tried the case to a jury. The jury convicted both appellants on the conspiracy counts and

---

[2] 16 U.S.C. § 3372(a)(2)(A) makes it "unlawful for any person to import, export, transport, sell, receive, acquire, or purchase in interstate or foreign commerce any fish or wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State."

[3] 16 U.S.C. § 3372(d) states that "[i]t is unlawful for any person to make or submit any false record account, or label for, or any false identification of, any fish, wildlife, or plant which has been, or is intended to be (1) imported, exported, transported, sold, purchased, or received from any foreign country; or (2) transported in interstate or foreign commerce."

substantive Lacey Act counts. On January 25, 2001, the district court sentenced Mr. Fountain to thirty months incarceration and Ms. Ellison to thirty-seven months incarceration. Both appellants filed a timely notice of appeal and raised several points of error. We address each in turn.

## II. ANALYSIS

### A. Failure to Instruct Jury on "Willfulness" and "Materiality"

Appellants contend that the district court committed constitutional error because it failed to issue either a "willful" instruction or a "materiality" instruction to the jury. Appellants' contentions are without merit.

### 1. Willfully

The *mens rea* requirement for violation of 16 U.S.C. § 3372(d), i.e, submitting false records, is set forth in the penalty provision at 16 U.S.C. § 3373(d)(3)(A)(ii). It provides that a person who *knowingly* violates 3372(d) shall be guilty of an offense carrying up to five years incarceration where the purchase or sale of fish in interstate commerce exceeds $350.

The federal courts have consistently found that willfully connotes a higher degree of criminal intent than knowingly. Knowingly requires proof of the facts that constitute the offense. *Bryan v. United States*, 524 U.S. 184, 193 (1998). Willfully requires proof that the defendant acted with knowledge that his conduct violated the law. *Ratzlaf v. United States*, 510 U.S. 135,

3

137 (1994).

Congress chose *knowingly* as the mens rea requirement for the false-records provision. The statute does not refer to the term, *willfully.* Because these are two distinct concepts, there is no basis for requiring the district court to instruct on the term *willfully.*

**2.   Materiality**

Appellants also contend that materiality is an element of § 3372(d).[4] They reason that, in the absence of a "willfulness" element, there must be a materiality element because the statute otherwise becomes one of strict liability. We disagree.

The Supreme Court has established a two-part test for determining whether materiality is an element of a particular federal crime. First, look to whether the text of the statute requires a showing of materiality. Second, if there is no requirement of materiality in the statute, look to see whether Congress used terms which have a specific common-law meaning which incorporated the materiality requirement. *See Wells v. United States*, 519 U.S. 482, 489-491 (1997); *Neder v. U.S.*, 527 U.S. 1, 20-21 (1999).

The text of § 3372(d) contains no materiality requirement.

---

[4] Materiality means "having a natural tendency to influence, or [being] capable of influencing, the decision of the decisionmaking body to which it was addressed." *Kungys v. United States*, 485 U.S. 759, 770 (1998).

4

Moreover, the terms used by Congress, "make or submit any false record, account, or label for, or any false identification of any fish . . ." have no specific common-law meaning which incorporate a materiality requirement.  Thus, appellants' "materiality" argument also fails.

## B.    Conspiracy

Fountain contends that there is insufficient evidence to convict him of conspiracy to violate the Lacey Act.  The test for reviewing the sufficiency of the evidence is whether a reasonable jury could conclude that the relevant evidence, direct or circumstantial, established all of the essential elements of the crime beyond a reasonable doubt when viewed in the light most favorable to the verdict.  *United States v. Loe*, 262 F.3d 427, 432(5th Cir. 2001).

After a thorough review of the trial record, we conclude that there is sufficient evidence to convict Fountain on the conspiracy count.  Fountain served as the day-to-day operations manager of Fountain Seafood, Inc.  He directed the activities of other employees, paid fisherman for their catches, and dealt with law enforcement agents who made compliance checks. Fountain's close involvement in the business provides circumstantial evidence of his knowledge of Shirley Fountain Ellison's illegal conduct.

Moreover, there was direct evidence of Fountain's own illegalities.  First, Fountain was present when Anthony Nelson, a

fisherman, discussed illegally borrowing another fisherman's 1996 license. Second, Fountain provided Edmond Hill, a fisherman, with a vessel that was illegally licensed. Third, two local fishermen admitted that they routinely consulted with Fountain about harvesting excess oysters. In sum, a reasonable jury could have concluded that Fountain was engaged in a conspiracy to harvest excess oysters and cover up those excesses by submitting false records.

## C.    Substantive Violations

Fountain contends there is insufficient evidence to sustain his convictions on the Lacey Act false records count and the Lacey Act counts based upon predicate state law violations. He argues there was no evidence that he had anything to do with the creation of the false records, and no evidence that any of the alleged violations were related to the proven interstate shipments. We disagree.

## 1.    False Records Violations

The fact that Fountain did not personally participate in creating the false records does not mean his sufficiency argument is persuasive. Under *Pinkerton v. United States*, 328 U.S. 640 (1946), Fountain can be convicted of the substantive false records offense so long as (1) the evidence established his knowing participation in the overall conspiracy; and (2) he could reasonably foresee that Ellison would create false records to cover

6

up their violations of Louisiana oyster laws. *See also United States v. Narviz-Guerra*, 148 F.3d 530, 535 (5th Cir. 1998)(noting that "once the conspiracy and the defendant's knowing participation therein is proved beyond a reasonable doubt, a defendant is guilty of the substantive acts his partners committed in furtherance of the conspiracy.").

Here, the jury found Fountain to have committed the substantive violation after being given a *Pinkerton* instruction. In light of the evidence establishing both Fountain's participation in the conspiracy and the foreseeability of Shirley Fountain Ellison creating and submitting the false records, we hold that the jury had sufficient evidence to convict Fountain of violating 16 U.S.C. § 3372(d).

**2. Interstate Shipments**

Appellants contend that the government failed to prove its Lacey Act case against them with respect to the counts which involved predicate state law violations. They argue that the oyster fishing violations were not proven to have been related to the specific interstate oysters shipments introduced at trial.

We find that the government connected the violations of Louisiana law to the interstate shipments alleged in the indictment. Louisiana law required appellants to keep accurate records. The government proved the falsity of Fountain Seafood's October 1996 – January 1997 records. Therefore, the violation of

the records-keeping provision of Louisiana law serves as a predicate offense for the interstate oyster shipments proven during the trial. In our view, there is sufficient evidence to conclude that the falsified records were related to many of the documented interstate shipments.

Furthermore, the evidence demonstrated other violations of Louisiana law, i.e, tagging violations, taking of oysters from closed areas, taking of excess limits of oysters, and licensing violations. It strains credulity to suggest that none of these predicate state law violations were related to the documented interstate oyster shipments. There is certainly enough evidence for a reasonable jury to conclude that the various state law violations were connected to the adduced interstate oyster shipments.

**III. CONCLUSION**

For these reasons, we AFFIRM appellants' convictions and sentences.

8