**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**July 20, 2007**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 06-30238

KINDER CANAL COMPANY, INC.; MIKE T. UNKEL,

Plaintiffs-Appellants,

versus

MIKE JOHANNS, SECRETARY, DEPARTMENT OF AGRICULTURE,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Louisiana
Case No. 2:05-CV-01123-JTT-APW

Before JONES, Chief Judge, and JOLLY and STEWART, Circuit Judges.

EDITH H. JONES, Chief Judge:

Appellants Kinder Canal Company, Inc. ("Kinder Canal") and Mike T. Unkel ("Unkel") challenge the district court's determination that they must refund farm-support payments received between 1996 and 2003 under various programs administered by the Department of Agriculture's Farm Service Agency ("FSA"). Finding that Appellants serially misrepresented program-eligibility data they reported to the FSA on contracts for farm-support benefits, the District Court upheld the FSA's demand to return all payments received by Kinder Canal and by Unkel in his individual capacity. We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The FSA program payments at issue in this case involve Farm Serial Number 1228 ("FSN 1228"), a parcel of agricultural land used for cultivation of wheat, oats, and rice in Allen Parish, Louisiana. FSN 1228 encompassed 1,136.9 total cropland acres and 668.0 acres of combined wheat, oat, and rice base. FSN 1228 was divided into seven numbered tracts: 417, 506, 507, 516, 517, 522, and 1447. The parcel was jointly owned by seven entities, including Kinder Canal, a Louisiana corporation consisting of nineteen members of the Unkel family. Appellant Unkel is Kinder Canal's president and a shareholder. Additionally, he holds a twenty-five percent stake in the Unkel Four Joint Venture, a separate farming entity co-owned by Unkel and three of his siblings. Having served as the Chairman of the FSA's Allen Parish Committee for approximately eighteen years, Unkel is a sophisticated participant in the FSA's various farm-support programs and is well versed in their technical requirements.

On July 18, 1996, acting in his capacity as Kinder Canal's president, Unkel signed a Form CCC-478 Production Flexibility Contract ("PFC"), to enroll FSN 1228 in the FSA's PFC Program.[1] See 7 C.F.R. § 1412.101 (1997) et seq. Beginning in

---

[1] The Program was authorized by the Federal Agricultural Improvement and Reform Act of 1996 ("FAIR"), Pub. L. No. 104-127, 110 Stat. 888 (1996), a farm bill that replaced the decades-old practice of subsidizing production of feed grains, wheat, upland cotton, and rice through direct income transfers, also referred to as deficiency payments. Whereas deficiency payments were made only when the market price for a covered commodity dropped below a predetermined target price, PFC payments were made irrespective

1996, under the Program farmers received a fixed annual payment in return for reducing their acreage of certain agricultural commodities.  The FSA approved the Kinder Canal PFC proposal. Kinder Canal, through Unkel, annually re-enrolled its cropland and received PFC payments from 1996 to 2002.  Additionally, from 1998 to 2001, the FSA made payments to Kinder Canal under the Marketing Loan Assistance Program ("MLA Program"), eligibility for which was directly tied to Kinder Canal's participation in the PFC Program.

In December 1991, several years before Kinder Canal enrolled in the PFC and MLA Programs, Unkel's aunt Eva, the owner of tract 517 (the "Eva Unkel tract"), died.  Appellant Unkel had held power-of-attorney for his aunt since 1983.  In 1993, the Eva Unkel tract was sold to two individuals unaffiliated with Unkel or any of the family business entities.  Unkel admits that when he first applied for PFC payments in 1996 he was aware that the Eva Unkel tract had been sold and that his power-of-attorney had terminated at his aunt's death.  Nonetheless, on FSN 1228's first PFC proposal, Unkel falsely recorded Mrs. Eva Unkel as tract 517's owner and did not notify the FSA of the actual owners.  When he re-enrolled Kinder Canal for PFC annual payments from 1997 until 2002, Unkel continued to misrepresent to the FSA the company's ownership of the Eva Unkel tract.

---

of market fluctuations.  FAIR allocated to the Secretary over $35 billion to be paid out to eligible farmers during the seven-year period from 1996 to 2002.

Another source of inflated PFC payments arose from FSA's mis-accounting for eligible acreage on certain tracts in FSN 1229 known as the Cole/Morrow tracts. Unkel asserts that he did not notice the FSA's mistake and accordingly requested PFC payments on the Cole/Morrow tracts' rice base acreage that was technically no longer eligible during the 1997-2002 program years.

In December 2002, Unkel enrolled FSN 1431, a reconstituted group of tracts, in a third FSA commodity-support program — the Direct and Counter-Cyclical Payments Program ("DCP Program").[2] See 7 C.F.R. 1412.101 (2003) et seq. In making base acreage and yield elections as required by the DCP contract, Unkel informed the FSA of one of the Eva Unkel tract's new owners, but failed to mention the second owner. And, as he had previously reported on the PFC contracts from 1997-2002, Unkel continued to incorrectly certify that the Cole/Morrow rice base acreage was eligible to receive DCP payments when in fact it was not. Kinder Canal's first DCP contract was approved on December 18, 2002. FSN 1431 received DCP payments for the 2002 and 2003 program years.

---

[2]The Direct and Counter-Cyclical Payments Program was authorized by the Farm Security and Rural Investment Act of 2002 ("FSRIA"), Pub L. No. 107-171, 116 Stat. 134 (2002). As its name suggests, the Program provides two types of subsidy payments to enrolled farmers. Participants receive direct payments independent of market fluctuations that are based upon the commodity type and amount of available cropland elected by the farmer. Counter-cyclical payments, in contrast, are based on a farm's historical acreage and crop yields and are triggered if market prices for covered commodities fall below levels specified by the FSRIA.

Unkel's misrepresentations regarding the ownership and crop acreage bases of FSNs 1228 and 1431 were discovered in 2003 by the Department of Agriculture's Office of Inspector General ("OIG") during an audit of commodity-support programs in Allen Parish. The audit was part of an effort by the FSA to determine farmers' eligibility for program participation and whether the current administration of program payments was based on valid acreage and yield determinations. The OIG found that representations made under Unkel's PFC, MLA, and DCP contracts were inaccurate and that Unkel had knowingly misrepresented the ownership and cropland acreage bases of FSN 1431 and its predecessor parcel, FSN 1228. The OIG additionally found that Unkel admitted to publicly discussing the 1993 sale of the Eva Unkel tract and to knowing that Kinder Canal had not owned or leased the tract since 1993, but that it nonetheless was enrolled for PFC and DCP Program payments based on the Eva Unkel tract's crop acreage base.

Despite Unkel's misrepresentation of the Eva Unkel tract's ownership and the FSA's deletion of the Cole/Morrow tracts, however, Kinder Canal received no excessive benefit payments, except during 2001. This is because the company's eligibility for PFC, MLA, and DCP annual payments consistently exceeded the payment limitations imposed by those programs.[3] In 2001, the combined contract misrepresentations on the Cole/Morrow and Eva Unkel tracts

---

[3]The PFC and DCP programs allowed a maximum annual payment of $40,000, and the maximum annual MLA payment was $75,000.

garnered Kinder Canal a modest $1,124.30 more than the benefits to which they were lawfully entitled.

Nonetheless, the OIG recommended in its audit report that the FSA's Louisiana State Committee pursue collection of all PFC and MLA payments Kinder Canal received between 1996 and 2002, as well as the 2002 and 2003 DCP payments. Additionally, the OIG recommended collection of all PFC and MLA payments Unkel received between 1996 and 2002 that derived from his participation in the Unkel Four Joint Venture.[4] The State Committee adopted the OIG's recommendations. Subsequent review by an FSA National Appeals Division Hearing Officer and the FSA's National Appeals Division ("NAD") Director affirmed the OIG's conclusions regarding Kinder Canal's and Unkel's liability.

Appellants turned to federal court for a declaratory judgment that the FSA abused its discretion in making the refund demand. The Secretary filed a cross-motion for summary judgment. The district court arrived at substantially the same conclusion as the NAD Director regarding Appellants' liability and entered judgment for the return of the commodity-support payments. FSA originally demanded well over a million dollars in restitution.

_____

[4]The State Committee also demanded return of commodity-support payments received by a third entity owned entirely by Unkel, Mike T. Unkel Farms, Inc. The National Appeals Division Director determined that the Committee recommendation assigning liability to Mike T. Unkel Farms was erroneous and that the FSA's refund demand was not supported by substantial record evidence. Mike T. Unkel Farms was dismissed from administrative review and is not a party to this appeal.

6

After it offset benefits to which the Unkel Four Joint Venture was entitled, FSA informally reduced its demand to the "modest" sum of $632,685.88, plus interest. See Kinder Canal Co., Inc. v. Johanns, 2006 WL 250485 (W.D. La. Jan. 31, 2006) (unpublished). This appeal followed.

## II. DISCUSSION

### A. Standard of Review

We review the district court's summary judgment grant de novo, applying the same standard used below. City of Shoreacres v. Waterworth, 420 F.3d 440, 445 (5th Cir. 2005). The FSA's demand for refund of program payments is reviewed pursuant to the Administrative Procedures Act, 5 U.S.C. § 701 et seq., under which this Court may set aside the FSA's decision only if the agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 64, 123 S. Ct. 2373, 2380 (2004) (quoting 5 U.S.C. § 706(2)(A)); Waterworth, 420 F.3d at 445. This standard of review is "highly deferential" to an agency's interpretation of its own regulations. Spiller v. White, 352 F.3d 235, 240 (5th Cir. 2003) (quoting Sabine River Auth. v. United States Dep't of Interior, 951 F.2d 669, 675 (5th Cir. 1993)). In undertaking appellate review of the FSA's determination, we emphasize our role in exercising only the "narrowly defined duty of holding agencies to certain minimal standards of rationality."

<u>Waterworth</u>, 420 F.3d at 445 (quoting <u>Avoyelles Sportsmen's League, Inc. v. Marsh</u>, 714 F.2d 897, 905 (5th Cir. 1983)).

**B.   Do The Regulatory Penalty Provisions Authorize FSA's Demand for Return of Program Benefits from Kinder Canal?**

Appellants first contend that because the misrepresentations concerning the Cole/Morrow and Eva Unkel tracts contained in the PFC and DCP contracts did not result in their receipt of program benefits to which they were not entitled, except during 2001, the statutory penalty provisions do not authorize the FSA's demand for repayment. On this score, the district court stated that:

> a mistake was made by the FSA in 1997 when the acreage tracts [i.e., the Cole/Morrow tracts] were deleted without removing the rice acreage basis [sic], however, Unkel knowingly made misrepresentations year after year after year regarding the true ownership and/or the absence of a lease agreement [regarding the Eva Unkel tract], consequently inflating the potential for program benefit payments. Thus, even though [Kinder Canal] had received the maximum amount of payments allowed by law in every year except 2001, this fact does not justify Unkel's perpetual fraud upon the FSA and the various payment benefit programs.

Appellants take issue with this conclusion, contending that "the district court erred in finding that a potential for benefits meets the regulatory requirement of a showing that the misrepresentation resulted in a Program benefit."

The language of the applicable regulations illustrates the infirmity of Appellants' argument. Using identical language, the PFC and DCP penalty provisions — 7 C.F.R. § 1412.405 (1997) and

8

7 C.F.R. § 1412.604 (2003), respectively — punish producers who "erroneously represented <u>any fact affecting a program determination</u>." (Emphasis added).  Appellants argue that the clause "any fact affecting a program determination" requires that the misrepresented fact resulted in an increased and unlawful payment of benefits.  In so doing, Appellants narrow the scope of the regulations by effectively replacing the phrase "program determination" with "program benefit."  Neither the PFC nor the DCP provision requires that, to be punishable, a misrepresentation must affect the amount of program benefits received by a producer.  In fact, the DCP provision applies to a much broader spectrum of conduct and reaches any misrepresentation that "tends to defeat the purpose of the program."  7 C.F.R. § 1412.604(b)(1).[5]  Certainly

---

[5]Analogizing to cases discussing the False Claims Act, 31 U.S.C. § 3729 <u>et seq.</u>, Appellants invite this Court to superimpose a "materiality requirement" onto the penalty provisions.  Appellants contend that since in no year except 2001 did the misrepresentations contained in the PFC and DCP contracts affect the amount of program benefits paid out to FSNs 1228 and 1431, the misrepresentations are immaterial and cannot be actionable under the penalty provisions.  There is no statutory basis for this contention.  As instructed by one of the False Claims Act cases cited by Appellants, we undertake a "natural reading of the full text" to determine whether materiality is required under a statute.  <u>Neder v. United States</u>, 527 U.S. 1, 21, 119 S. Ct. 1827, 1839 (1999) (quoting <u>United States v. Wells</u>, 519 U.S. 482, 490, 117 S. Ct. 921, 927 (1997)).  Both penalty provisions' texts plainly apply to misrepresentation of "<u>any fact affecting a program determination</u>."  <u>See</u> 7 C.F.R. § 1412.405 (1997), 7 C.F.R. § 1412.604 (2003).  Neither provision conditions liability upon facts affecting payment of a program benefit, as Appellants argue.  Because the plain statutory language is far broader than Appellants contend, their materiality argument is misplaced.

9

one of the many purposes of the FSA's commodity-support programs is to accurately ascertain and track the ownership status of enrolled farms. This purpose was thwarted by Unkel's repeated, false averments regarding ownership of the Cole/Morrow and Eva Unkel tracts. Even though minuscule undeserved program benefits were paid by the FSA, the misrepresentations certainly affected the agency's mistaken determination that the Cole/Morrow and Eva Unkel tracts were eligible for program enrollment. Consequently, the FSA's repayment assessment was not arbitrary, capricious, or an abuse of agency discretion. FSA may demand full repayment of the PFC, MLA,[6] and DCP payments received by Kinder Canal during 1996-2003.

---

[6]Because the MLA payments were conditioned on Kinder Canal's eligibility under the PFC Program, our finding of PFC ineligibility requires refund of the MLA payments.

10

**C. Does FSA's Mistaken Deletion of the Cole/Morrow Tracts Affect Kinder Canal's Liability?**

Kinder Canal next challenges the FSA's refusal to afford relief under 7 C.F.R. § 1412.602(a)(1),[7] a provision that addresses reporting violations of wild rice acreage. That section provides that if a wild rice producer's reported base acreage is inaccurate but still within five percent of the actual acreage, the producer must accept a reduction in the DCP payments for the overstated acreage. See § 1412.602(a)(1), (b). Kinder Canal contends that the FSA's mistaken deletion of the Cole/Morrow tracts caused it to overreport program-eligible rice base acreage by 32.9 acres, or 4.935 percent of the total base acreage. Only when the Cole/Morrow tract overage is added to the overage caused by Unkel's fraudulent inclusion of the Eva Unkel tract, does the aggregate overage exceed the five-percent regulatory tolerance under § 1412.602(a)(1). Thus, Appellants conclude, "[i]n the interest of fairness, where the Agency was as much at fault, if not more so, than Kinder Canal,

---

[7] 7 C.F.R. § 1412.602 states in pertinent part:
(a)(1) If an acreage report of . . . wild rice planted on base acreage of a farm enrolled in DCP is inaccurate but within tolerance as provided in paragraph (b) of this section and [the Commodity Credit Corporation] determines the producer made a good faith effort to comply with the provisions of this section, the producers shall accept a reduction in the direct and counter-cyclical payments for each such acre. . . .
(b) For the purposes of this section, tolerance is the amount by which the determined acreage may differ from the reported acreage and still be considered in compliance with program requirements. Tolerance for . . . wild rice plantings is 5 percent of the reported . . . wild rice acreage, not to exceed 50 acres.

this total percentage [overage] should be cut in half to meet the 5.0% tolerance allowed by law."

We cannot agree. First, § 1412.602 applies to violations of wild rice acreage reporting, not contract violations covered by 7 C.F.R. § 1412.401 (1997) and 7 C.F.R. § 1412.601 (2003), the provisions applicable here. Second, even if application of § 1412.602 were appropriate in this case, the NAD Director's determination that Unkel misrepresented the Eva Unkel tract acreage in bad faith would trigger § 1412.602(a)(3), the subsection applied to bad-faith misrepresentations, not (a)(1) as Kinder Canal claims. Subsection (a)(3) requires forfeiture of DCP payments and renders a producer ineligible to receive any commodity-support payment under Title 7 of the Code. Third, although Kinder Canal may be correct in alleging that the FSA's negligent deletion of the Cole/Morrow tracts caused an overage that Unkel did not notice when he renewed the contracts, the FSA's action does not allow us to ignore Unkel's misrepresentation of the Eva Unkel tract's ownership for a seven-year period.[8] We see no justification — under the regulations or general equity principles — for the rationale that

_____

[8]Unkel additionally failed to comply with 7 C.F.R. § 1412.303(a), which requires submission of the terms of a written lease of eligible base acreage to the County Committee prior to approval of the benefits contract.

the FSA's negligence somehow mitigates Unkel's affirmative misrepresentations.[9]

**D.   Can FSA Demand Refund of Program Benefits Received by Unkel in his Individual Capacity?**

Unkel contends that the district court erred in upholding the FSA's assessment of his individual liability as a "producer" in the Unkel Four Joint Venture based on the payments Kinder Canal obtained by deception under the contracts for FSNs 1228 and 1431. Unkel maintains that Kinder Canal alone qualifies as a "producer" for purposes of its contracts under the applicable regulations and that Unkel cannot therefore be liable for any repayment of benefits without piercing Kinder Canal's corporate veil. He contends that the applicable regulations do not permit piercing the corporate veil. The Secretary, however, denies piercing the corporate veil[10] and argues that because Unkel qualified as a "producer" for one purpose — the Unkel Four Joint Venture — the regulations subject him to liability for any misstatements connected with any program contracts. The Secretary is correct.

---

[9]Moreover, we see no merit in Appellants' ancillary argument that the NAD Director abused his discretion in not affording equitable relief under 7 C.F.R. § 11.9(e). Equitable relief is inappropriate under that provision and 7 C.F.R. § 1412.602(a)(1) when, as here, a producer has made repeated bad-faith misrepresentations of eligible base acreage.

[10]The Secretary notes, relatedly, that his hearing officer determined that Mike T. Unkel Farms, Inc., as an independent corporate "producer" on contracts not involved in the misstatements, could not be required to refund program payments.

13

Unkel is a "producer" on contracts involving the Unkel Four Joint Venture within the meaning of the regulatory provisions. The Code of Federal Regulations defines the term "producer" as used in Chapter XIV of Title 7 as "an owner, operator, landlord, tenant, or sharecropper, who shares in the risk of producing a crop and who is entitled to share in the crop available for marketing from the farm or would have shared had the crop been produced. . . ." 7 C.F.R. § 718.2. According to the penalty provisions, any producer who has knowingly "misrepresented any fact affecting a program determination" must refund all payments, plus interest, received on all contracts to which the producer is a party. See 7 C.F.R. § 1412.405(b) (1997); 7 C.F.R. § 1412.604(b) (2003).[11]

_____

[11] 7 C.F.R. § 1412.405(b) (1997) Misrepresentation and scheme or device.
   (b)  A producer who is determined to have knowingly:
      (1)  Adopted any scheme or device that tends to defeat the purpose of the program;
      (2)  Made any fraudulent representation; or
      (3)  Misrepresented any fact affecting a program determination shall refund to CCC all payments, plus interest determined in accordance with part 1403 of this chapter received by such producer with respect to all contracts. The producer's interest in all contracts shall be terminated.

7 C.F.R. § 1412.604 (2003) Misrepresentation and scheme or device.
   (b)  A producer shall refund to CCC all direct and counter-cyclical payments, plus interest as determined in accordance with part 1403 of this chapter, received by such producer with respect to all contracts if the producer is determined to have knowingly done any of the following. In addition, the producer's interest in all such contracts shall be terminated.

14

The Secretary's reading of these provisions is broad but plainly reasonable. Unkel is a producer because he is a joint venturer in the Unkel Four Joint Venture. Although no misrepresentation was made by or for that entity, he nevertheless knowingly misrepresented facts affecting program determinations on the Kinder Canal contracts, both in his capacity as a corporate officer of Kinder Canal and as the false agent of Eva Unkel after her death. The cited regulations do not require a connection between the contracts from which a producer receives benefits and those in which misrepresentations are made. On the contrary, as has been explained already, liability attaches when "<u>any</u> fact affecting <u>a</u> program determination" has been misrepresented. The Secretary literally applied this language and also literally applied the penal consequences by ordering Unkel to refund his payments received through the Unkel Four Joint Venture in his "producer" capacity. He is not being held "solidarily liable" with Kinder Canal.

Upholding the Secretary's decision on this basis, we need not and do not decide whether Unkel could have been deemed a "producer" under any other interpretation of the regulations.

### III. CONCLUSION

---

(1) Adopted any scheme or device that tends to defeat the purpose of the program;
(2) Made any fraudulent representation; or
(3) Misrepresented any fact affecting a program determination.

15

For the foregoing reasons, the district court's grant of summary judgment to the Secretary is **AFFIRMED.**