# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3136

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Daniel P. Mitchell, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 11, 2008
Filed: June 10, 2008

_____

Before RILEY, GRUENDER, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

In August 2005, Daniel P. Mitchell was convicted of knowingly and fraudulently making a false statement under penalty of perjury in relation to a bankruptcy case, in violation of 18 U.S.C. § 152(3). The district court[1] ordered a new trial because the jury did not unanimously find that the false statements were material. The district court denied Mitchell's motion to dismiss the indictment on double jeopardy grounds, and we affirmed that decision. United States v. Mitchell, 476 F.3d 539 (8th Cir. 2007).

_____

[1] The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

At a second trial, a jury again found Mitchell guilty of violating section 152(3). He appeals once again, raising issues of double jeopardy and sufficiency of the evidence. Our review of the evidence is in the light most favorable to the verdict, accepting all reasonable inferences that support the verdict, and resolving all evidentiary conflicts in the Government's favor. See United States v. Johnson, 450 F.3d 366, 372 (8th Cir. 2006), cert. denied, 127 S. Ct. 1009 (2007). We affirm the conviction.

I.

Mitchell filed a voluntary petition for Chapter 7 bankruptcy protection on July 12, 2000. In his schedules, he reported $35,000 in assets, including a truck worth $16,000. He claimed $839,995 in liabilities, including debt of $160,000 to F&M Bank, a truck loan of $15,525, and $96,400 in priority claims from past-due taxes. He declared that his only income was $1,000 per month as a laborer for Wood Floors Import. In his statement of financial affairs, he stated that in the two years preceding July 12, 2000, he did not own any business and was not an officer, director, or executive of any business. He reported that he had not made any payments of more than $600 to any creditor within 90 days before the petition. When Mitchell signed the schedules and statement, he declared "under penalty of perjury" that the schedules and statement were true and correct.

Mitchell founded Wood Floors Import Distributor, L.C., (WFI) in January of 1998. WFI imported bamboo flooring from China and distributed it throughout the United States. Mitchell's wife Kathy did data entry for the company but did not have an ownership interest. After the company was formed, Mitchell discussed with his attorneys the possibility of transferring ownership of WFI to Kathy so that it would not be affected by the personal bankruptcy he was contemplating. Kathy knew nothing about this plan until March of 2000. That month, Mitchell directed her to type meeting minutes reflecting that he gave his 75% ownership interest to her on

November 20, 1998. Mitchell explained that the company had to be "out of his name for so long of a period so that they couldn't attach to it."

The minutes said that Mitchell would remain as president of the company, and Kathy would hold all other titles. She sent the minutes to Mitchell's corporate attorney, who on March 30, 2000, prepared certificates of ownership to be signed and delivered. Despite the new paperwork, nothing changed in the operation of WFI. Mitchell continued to run the business; Kathy's responsibilities were not increased. She did not consider herself to have authority to pay WFI's bills, and only signed checks as Mitchell directed. On paper, Kathy made $10,000 per month, but Mitchell treated the money as his own and told her how to spend it.

In late 2002, Kathy's relationship to Mitchell and role in WFI changed. On October 29, 2002, she filed for divorce. She began to fear that, because she was the owner of WFI "on paper," she would be liable for anything that the company did. On the advice of her attorney, she fired Mitchell from WFI and denied him access to its assets. She filed a Chapter 7 bankruptcy petition for the company on December 19, 2002.

Upset at the way he was treated, Mitchell contacted Assistant United States Trustee Janet Reasoner in January of 2003 to accuse Kathy of bankruptcy fraud. He told Reasoner that he had formed WFI in 1998 and had transferred it to Kathy three years before. Instead of discussing the fraud accusations, however, Mitchell explained that he wanted to be allowed to liquidate the inventory in WFI's bankruptcy estate. He provided two three-ring binders containing information about WFI and its business plan. Among the documents was an amortization schedule showing WFI's payments on Mitchell's loan from F&M Bank, with an adhesive note on it that said, "This was income to Dan. Not a loan from the co. to pay a loan." There was also a copy of WFI's list of payments to insiders, which showed that Mitchell was paid approximately $425 per week. Attached to the list was another adhesive note that

said, "Being the Originator Starter of the Co. . . . 425.00 take home every 2 weeks Ha! Ha!" After the meeting, Mitchell's lawyer filed a motion on his behalf asking the bankruptcy court to compel the Chapter 7 trustee to hire him to liquidate the inventory.

As she prepared to resist Mitchell's motion, Reasoner learned that he had filed a personal bankruptcy in 2000. She reviewed the filings from that case and became suspicious that Mitchell had concealed his interest in WFI or failed to disclose that he transferred the business. At the hearing on Mitchell's motion, Reasoner planned to gather additional information that she might use for a criminal referral.

The bankruptcy court held the hearing on March 4, 2003. Mitchell testified in support of his motion. In response to questions from WFI's attorney, Mitchell admitted that in July of 2000 he "was the President and CEO [of WFI] according to Kathy's records," but identified himself as a laborer on his bankruptcy schedules. He claimed that he "had to . . . [b]ecause of tax reasons and my wife . . . pretty much didn't want to have the IRS connecting this company with the other company."[2] When Reasoner asked him about the amortization schedule, he confirmed that from March 27, 2000 to October 7, 2002, he directed WFI to pay F&M Bank more than $44,000 on the debt that he personally owed, and that the payments were income to him.

The most telling part of Mitchell's testimony, however, was his reaction to Reasoner's suggestion that he was a creditor of WFI:

> I feel as an owner. I've never lost that position. Just because a piece of paper takes it away from me does not change the fact that I started this, I ran it, I put 65 hours a week in this company.

---

[2] Mitchell listed the companies Wood Floors, Inc., Eastern Iowa Granite & Marble, Inc., and Tile Crafters in his personal bankruptcy.

Ten days later, Reasoner made a criminal referral to the United States Attorney regarding Mitchell's 2000 personal bankruptcy.

## II.

A grand jury indicted Mitchell on charges that he knowingly and fraudulently concealed his ownership interest in WFI and total income from January 1, 1999 through July 11, 2000 in connection with a bankruptcy case, in violation of 18 U.S.C. § 152(1) (Count 1); and that he knowingly and fraudulently submitted a false declaration, certificate, verification, and statement under penalty of perjury in relation to a bankruptcy case, in violation of 18 U.S.C. § 152(3) (Count 2). For Count 2, the Government's three theories were that Mitchell failed to disclose: his ownership interest in WFI; his total income from January 1, 1999 through July 11, 2000; and debt payments made on his behalf by WFI on the F&M loan.

The district court held a jury trial in August of 2005. The jury found Mitchell guilty of Count 1. In interrogatories, the jury specified that it unanimously found that Mitchell fraudulently concealed his income, but did not unanimously find that he concealed his ownership interest in WFI. On Count 2, the jury found Mitchell guilty, specifically finding in a special interrogatory that he made false statements about his income and debt payments made on his behalf. The jury did not unanimously find that he failed to disclose his ownership interest in WFI. In response to the special interrogatory of whether the Count 2 statements were "material" matters, the jury answered "No."

Mitchell filed a motion for a judgment of acquittal and a motion for a new trial. The court granted his motion for a new trial on Count 2, but denied it with respect to Count 1. The court reasoned that Mitchell was entitled to a new trial on Count 2 because the crime requires a showing of materiality beyond a reasonable doubt and

the jury did not unanimously find that any false statement was material. The motion for a judgment of acquittal was denied on both counts, as was Mitchell's subsequent motion to dismiss the Count 2 indictment on double jeopardy grounds.

Mitchell appealed his conviction on Count 1 and the denial of his motion to dismiss Count 2 on double jeopardy grounds. We reversed his conviction on Count 1, but affirmed the denial of his motion to dismiss Count 2. Mitchell, 476 F.3d at 544-45. The district court's order for a new trial on Count 2 remained in effect.

## III.

The second trial began with the testimony of Kathy Bigelow, Mitchell's ex-wife. She testified that she did not know anything about Mitchell's desire to transfer WFI to her until March of 2000. She said that on March 16, 2000 she typed the meeting minutes that described the supposed transfer of ownership, but Mitchell told her to date them November 20, 1998. Then she explained that Mitchell directed how she was to spend WFI's funds. Kathy testified that in 2000, when Mitchell listed his position as laborer, he was in fact the owner, operator, and president of WFI.

Sheryl Schnittjer was the bankruptcy panel trustee assigned to Mitchell's case in 2000. She gave an overview of the petition, statement of financial affairs, and schedules that Mitchell filed in the bankruptcy court. She confirmed that the documents made no mention of the WFI transfer, his position as an executive in the company, or WFI's payments on his debts. Schnittjer further stated that Mitchell did not bring up any of those matters at the meeting of creditors. If he had disclosed those facts in his documents, she said that she would have made further inquiry as to their legitimacy. She testified that under state law, she could have investigated transfers up to five years back because there were outstanding government debts.

The Government called Assistant United States Trustee Janet Reasoner, who recounted her meeting with Mitchell and his admissions at the bankruptcy court hearing. Audio excerpts of Mitchell's testimony from that hearing were played for the jury. Reasoner testified that if the information Mitchell gave her had been disclosed in his 2000 bankruptcy, the trustee undoubtedly would have made inquiry as to Mitchell's ownership of WFI and the validity of the transfer. According to Reasoner, if the transfer had been made within a year of the filing, the trustee could have liquidated Mitchell's interest in WFI and distributed it to the creditors in Mitchell's bankruptcy.

Mitchell introduced the testimony of WFI's accountant, his lawyer for the 2000 bankruptcy, and a neighbor. The accountant provided information about WFI's tax returns, which showed that Kathy was the owner of WFI in 1998. Mitchell's bankruptcy lawyer acknowledged that Mitchell did not provide him with information about the transfer of WFI, the company's payments on Mitchell's debts, or Mitchell's position as WFI's president. The lawyer opined, however, that a transfer in 1998 would not have been voidable. Mitchell's neighbor testified that Mitchell talked to him about transferring WFI to Kathy in 1998, and that Kathy was in charge of WFI's money.

In the closing argument, Mitchell depicted his prosecution as the product of a nasty divorce. He attacked Kathy's credibility. He suggested that the Assistant United States Trustee Janet Reasoner was biased against him because Reasoner's sister-in-law, Carroll Reasoner, was one of Kathy's lawyers. According to Mitchell, Kathy was the owner of WFI, but the parties had a family agreement about how it was to be run. The last part of his argument focused heavily on the materiality of the alleged false statements.

The district court submitted a different verdict form to the jury than it had during the first trial. As to each of the three theories, the verdict form asked the jury

to make a finding of guilty or not guilty. The instructions provided a definition of materiality and gave materiality as an element of the offense, but there was not a special interrogatory on the topic.

The jury found Mitchell guilty as to each of the three theories. Mitchell moved for acquittal, arrest of judgment, and a new trial. The court upheld the verdict as supported by the evidence and not barred by the Double Jeopardy Clause. It rejected his argument that he was entitled to an advice of counsel defense. Because it found that its rulings were not erroneous, the court denied a new trial.

IV.

Mitchell raises six points on this appeal. For his first and third points, he argues that he should have been acquitted based on the jury's findings in the first trial. In his second and fourth points, he argues that the Government's evidence was not sufficient to prove materiality or his ownership of WFI at the time he filed his bankruptcy petition. He further argues, in points five and six, that his answers to the questions in the bankruptcy documents were objectively reasonable, and that the district court should have submitted an instruction on the advice of counsel defense. For the reasons given below, we affirm the district court's judgment.

A.

In his first and third points, Mitchell offers a renewal of the double jeopardy issue that was before us in the first appeal. See Mitchell, 476 F.3d at 544-45. As we discussed in that decision, the jury in the first trial did not unanimously find that his false statements were material. Mitchell also points out that the first jury did not unanimously find that there was a false declaration that he did not have an ownership interest in WFI. He argues that in the first appeal, we did not consider whether there

is a presumption that a jury's verdict is unanimous or whether the district court's decision violated principles of fundamental fairness.

In the first appeal, we reasoned that the language of the third interrogatory was "not susceptible to discerning just what, specifically, the jury found; we know merely that it was unable to unanimously agree beyond a reasonable doubt that the statements were material." Id. at 545. By the same logic, all we know from the second interrogatory is that the jury was not able to unanimously agree that Mitchell made a false declaration as to his ownership interest in WFI. The language does not suggest that the jury unanimously found a reasonable doubt on this issue.

We will adhere to a decision in a prior appeal of the same case unless a party introduces evidence that is substantially different, or the prior decision is clearly erroneous and manifestly unjust. United States v. Bartsh, 69 F.3d 864, 866 (8th Cir. 1995). Mitchell's arguments may be slightly different, but the evidence is not. Nor has he persuaded us that our prior decision was clearly erroneous or manifestly unjust. We decline to revisit the double jeopardy issue. See United States v. Washington, 197 F.3d 1214, 1216 (8th Cir. 1999).

### B.

The second and fourth points in Mitchell's brief relate to the sufficiency of the Government's evidence to sustain the conviction. He argues that there was insufficient evidence that the false statements were material, and insufficient evidence to support the first theory, that Mitchell owned WFI. We review the sufficiency of the evidence *de novo*, and will reverse only if no reasonable jury could have found the defendant guilty. Johnson, 450 F.3d at 372.

Mitchell is guilty of Count 2 if he "knowingly and fraudulently ma[de] a false declaration, certificate, verification, or statement under penalty of perjury" in or in

relation to any bankruptcy case. 18 U.S.C. § 152(3). The word "material" appears nowhere in the statute. We have assumed that the false statement must be made with regard to a material matter, see United States v. Yagow, 953 F.2d 427, 432 n.2 (8th Cir. 1992), but Mitchell does not cite a case in which we have reversed a section 152 conviction because there lacked evidence of materiality. Interpreting a similar criminal statute, the Supreme Court has since held that materiality is not an element of the crime of "knowingly making any false statement or report . . . for the purpose of influencing in any way the action" of a federally insured bank. United States v. Wells, 519 U.S. 482, 490 (1997) (interpreting 18 U.S.C. § 1014). The Court did not believe that an unqualified reading of section 1014 would pose the "risk of criminalizing so much conduct as to suggest that Congress meant something short of the straightforward reading." Id. at 498-99. The knowledge element and the term "for the purpose of influencing" was enough to narrow the class of criminal conduct in the same manner as an implied materiality requirement. Id. at 499.

Likewise, we believe that the term "knowingly and fraudulently" is enough to limit the class of section 152(3) violations such that a materiality requirement should not be implied. But even if materiality was required, there was plenty of evidence to prove that Mitchell's false statements would meet our definition of "material." We have noted that materiality is "'readily established' and does not require a showing that the creditors were harmed by the false statements." Yagow, 953 F.2d at 433 (quoting United States v. Phillips, 606 F.2d 884, 887 (9th Cir. 1979)). Because they are pertinent to his financial transactions, Mitchell's statements relating to his employment and income are material. See id. at 433. Statements that may impede an investigation into the debtor's financial history are also material. Phillips, 606 F.2d at 887. To the extent that Mitchell's false statements were not in themselves material, the testimony of Sheryl Schnittjer and Janet Reasoner was adequate to establish materiality.

For his argument that there was no proof he owned WFI, Mitchell asserts that Kathy's testimony is inconsistent with the income tax returns and her subsequent conduct in assuming ownership of the company and firing him. It is the task of the jury to evaluate a witness's credibility; attacks on the sufficiency of the evidence based on the witnesses' credibility are rarely an appropriate ground for reversal. United States v. McKay, 431 F.3d 1085, 1094 (8th Cir. 2005). We would reject the evidence only if it asserted facts straying into the realm of impossibility. See United States v. Grover, 511 F.3d 779, 782 (8th Cir. 2007). Although Kathy's exercise of control over WFI may seem inconsistent with Mitchell's ownership, the situation is consistent with longstanding principles of property law.

It is well settled that a person who fraudulently conveys property to avoid the reach of creditors is at the grantee's mercy as to whether he will ever get his property back. See Weir v. Day, 10 N.W. 304, 305-06 (Iowa 1881); Holliday v.Holliday, 10 Iowa 200, 201 (1859). This is because the "clean hands" maxim bars either party to the conveyance from obtaining affirmative judicial relief to enforce the arrangement. Opperman v. M & I Dehy, Inc., 644 N.W.2d 1, 7 (Iowa 2002); Holliday, 10 Iowa at 201. Put another way, after a fraudulent conveyance the grantee may hold the property in a secret trust for the benefit of the grantor, but the courts are unwilling as a matter of policy to enforce that trust, except for the benefit of creditors. See Weir, 10 N.W. at 305. So, regardless of whether Mitchell had a judicial remedy to enforce his interest, both Kathy's testimony and Mitchell's admissions at the bankruptcy hearing established that Mitchell was the beneficial owner of WFI at the time he filed his bankruptcy petition.

## C.

The fifth and sixth points of Mitchell's brief provide arguments in support of overturning the jury's findings of guilt on the second and third theories of Count 2. In this case, the Government sought to prove that Mitchell violated section 152(3) by

specifying three separate means, as permitted by Rule 7(c)(1) of the Federal Rules of Criminal Procedure. Proof of any one of the means will sustain the conviction. See United States v. Platter, 514 F.3d 782, 786-87 (8th Cir. 2008). As discussed above, there was sufficient evidence to sustain Mitchell's conviction on the theory that Mitchell violated section 152(3) by not disclosing his ownership in WFI. Thus, we need not measure the proof in support of the second and third theories.

V.

We affirm the judgment of the district court.

_____